MYRA A. WHEELER, Appellant, v. THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Respondent.

To excuse non-performance of an express condition in a contract, it must appear that performance could not, by any means, have been accomplished.

Where a policy of life insurance contains a clause forfeiting it in case of non-payment of any premium when due, the insanity of the insured is not an excuse for non-payment, and does not effect a waiver of the

forfeiture ; as it is not necessarily an obstacle to the performance of the condition ; payment may be made as well by any other person.

*Cohen* v. *N. Y. M. L. Ins. Co.* (50 N. Y. 610), and *Sands* v. *N. Y. L. Ins. Co.* (id. 626), distinguished.

*Baldwin* v. *N. L. Ins. Co.* (3 Bosw. 530), distinguished, and also stated to have been overruled by *Evans* v. *U. S. Life Ins. Co.* (64 N. Y. 304).

A policy of life insurance contained a clause to the effect that if, after the payment of two or more annual premiums, it should cease and determine because of default in payment of subsequent premiums, the company would grant a paid-up policy for such amount as the then present value of the policy would purchase, provided the policy should be transmitted and application for the paid-up policy made within one year after default. In an action upon the policy the complaint alleged in substance that after three annual premiums were paid default was made, the insured died, and within a year after the default the owner of the policy transmitted it to the company with proof of loss, but said company refused to grant a paid-up policy. *Held*, that the complaint made out a cause of action, and that a demurrer thereto was properly overruled; that the right to a paid-up policy was not determined by the death of the assured, and upon refusal to issue it a liability was created for the amount for which it should have been issued.

*Wheeler* v. *Conn. M. L. Ins. Co.* (16 Hun, 317), reversed.

(Argued October 14, 1880 ; decided November 16, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order reversing an order of Special Term, which overruled a demurrer to plaintiff's complaint. (Reported below, 16 Hun, 317.)

This action was brought upon two policies of insurance issued by defendant upon the life of John G. Vose, and assigned to the plaintiff.

The complaint alleged the issuing of the policies, copies of which were annexed. They each contained the following conditions :

" 2d. That this policy shall not take effect until the advance premium hereon shall have been actually paid, during the life-time of the insured, and that if any subsequent premium on this policy be not paid when due, then this policy shall cease and determine (except as hereinafter provided), and this company shall not be liable for the payment of the sum insured

herein, nor of any part thereof; and that no premium on this policy shall be considered as paid unless a receipt shall be given therefor, signed by the president or secretary of the company."

"6th. That if, after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default in the payment of any subsequent premium when due, then, notwithstanding such default, this company will grant a 'paid-up policy' (payable as above) for such amount as the then present value of this policy will purchase as a single premium, provided that this policy shall be transmitted to and received by this company, and application made for such 'paid-up policy' within one year after default in the payment of premium hereon, shall first be made."

The complaint alleged that the policies were assigned by Vose to his children, for whom he was general guardian, that three annual premiums were paid, as they fell due, but that premiums falling due October 28, 1873, were not paid. As a reason for such default the complaint alleged as to each policy:

"That previous to said last-mentioned day the said John G. Vose became and was, by the visitation and act of God, insane and was consequently unable to, and did not, pay the premium which became due on said last-mentioned day on said policy and on the policy hereinafter mentioned, although he was possessed of money sufficient to pay the same, both of his own and of, and belonging to, his said children, but he was bereft of reason, and in consequence thereof did not know nor remember that said premium was then due, nor that he had agreed to pay the same."

The complaint also alleged that Vose died March 17, 1874; that on or about October 10, 1874, due proofs of loss were presented to defendant and payment of the sum insured demanded and refused; also, "that when such proofs of loss were presented to the defendant the said policy was transmitted to and received by the said defendant, but it refused to grant a paid-up policy for such amount as the present value of the policy on

the 28th day of October, 1873, would purchase as a single premium * * * and also refused to pay the amount of insurance to which said dividend, as an annual payment, made on the 28th day of October, 1873, would have entitled the claimants to."

Defendant demurred upon the ground that the complaint did not state facts constituting a cause of action.

Further facts appear in the opinion.

*Everett P. Wheeler* for appellant. Equity will relieve against a forfeiture caused by the non-payment of premiums upon a policy of life insurance. (*Cohen* v. *N. Y. Mut. Life Ins. Co.*, 50 N. Y. 610; *Sands* v. *N. Y. Life Ins. Co.*, id. 626; *Homer* v. *Ins. Co.*, 67 id. 478, 481; *Hamilton* v. *Mut. Life Ins. Co.*, 9 Blatchf. 234; *N. Y. Life Ins. Co.* v. *Clopton*, 7 Bush [Ky.], 179; *Worth* v. *Edmonds*, 52 Barb. 40.) The payment of the premium was a condition subsequent. (*People* v. *Security L. Ins. Co.*, 78 N. Y. 115, 126.) Equity will relieve against a forfeiture for breach of a condition subsequent, caused by unavoidable accident, by fraud, by surprise, or by ignorance not willful. (2 White & Tudor's Leading Cases in Equity, 1105 [4th ed.], note to *Sloman* v. *Water; Eaton* v. *Lyon*, 3 Ves. Jr. 690; *Hill* v. *Barclay*, 18 Ves. 56, 62; *Harris* v. *Troup*, 8 Paige, 423; *Bargent* v. *Thompson*, 4 Giff. 478; *Henry* v. *Tupper*, 29 Vt. 358.) No agreement of the parties can deprive courts of equity of this power, or exclude its application to a particular case. (2 Wash. on Real Estate, 68; *Ins. Co.* v. *Morse*, 20 Wall. 445.) The insanity alleged could justly be called the "act of God." (2 Kent's Com. 597; *Baldwin* v. *N. Y. Life Ins. Co.*, 3 Bosw. 530; *Howels* v. *Knickerbocker Life Ins. Co.*, 44 N. Y. 276.) The company had in its possession, when the premiums became due, unpaid dividends on the policies, and should have applied them as a partial payment of the premiums falling due on that day. (*Cavilli* v. *Allen*, 57 N. Y. 508; *Stephen* v. *Fowler*, 9 Paige, 280; *Wilder* v. *Ewbank*, 21 Wend. 587; *Brooklyn Cent. R. R.* v. *Brooklyn City R. R.*, 34 Barb.

358, 366; *Van Rensselaer* v. *Jewett*, 2 Comst. 141; *Hogeboom* v. *Hall*, 24 Wend. 141.)  The courts have been astute to find occasion to hold that the strictness of these clauses of forfeiture has been waived. (*Homer* v. *Guardian Ins. Co.*, 67 N. Y. 478; *Dilleber* v. *Knickerbocker Life Ins. Co.*, 76 id. 567; *Buckbee* v. *U. S. Ins. Co.*, 18 Barb. 541; *Wing* v. *Harvey*, 27 Eng. L. & E. 9, 140; *Life Ins. Co.* v. *Eggleston*, 6 Otto, 572.) A tender of the unpaid premium was not necessary or appropriate. (50 N. Y. 636; *Everett* v. *Saltus*, 15 Wend. 474; *Miesell* v. *Globe Ins. Co.*, 76 N. Y. 115.)  Plaintiff is still entitled to paid-up policies under the sixth clause of the policy. (*Homer* v. *Guardian Ins. Co.*, 67 N. Y. 478; *Ellis* v. *Albany City Ins. Co.*, 50 id. 402; *Post* v. *Ætna Ins. Co.*, 43 Barb. 351; *Marine Bank* v. *Fiske*, 71 N. Y. 353.)

*W. A. Beach* for respondent.  The subsequent insanity of a contracting party does not discharge him from the obligation of his contract or relieve him from the performance of its conditions. (*Howell* v. *The Knickerbocker Life Ins. Co.*, 44 N. Y. 276.)  The doctrine by which performance of contract conditions is excused, when rendered impossible by the act of God, is confined exclusively to cases where the act to be done is personal and can be performed only by the party disqualified. (*Wolfe* v. *Howes*, 20 N. Y. 197; *Clark* v. *Gilbert*, 26 id. 279; *Spalding* v. *Rosa*, 71 id. 40.)  The non-performance of a contract is not excused by the act of God when it may be substantially carried into effect although the act of God makes a literal and precise performance of it impossible. (*Williams* v. *Vanderbilt*, 28 N. Y. 117; *Beebe* v. *Johnson*, 19 Wend. 500; *Blacksmith* v. *Fellows*, 7 N. Y. 401, 415 [affirmed in Sup. Ct. U. S. 19 How. 366]; *Norton* v. *Woodruff*, 2 N. Y. 153; *Tompkins* v. *Dudley*, 25 id. 272; *Harmony* v. *Bingham*, 12 id. 99; 52 Barb. 40; 6 Rep. 141; 47 N. Y. 62.)  When a party engages unconditionally, by an express contract, to do an act, performance is not excused by inevitable accident or other unforeseen contingency not within his control. (*Dexter* v. *Norton*, 47 N. Y. 62; *Tompkins* v. *Dudley*, 25 id. 275, 277;

*Harmony* v. *Bingham*, 12 id. 99, 107, 115; *Thornborow* v. *Whitacre*, 2 Ray, 1164.) The contracts of a lunatic are not *per se* either void or voidable. Unsoundness of mind will not vacate a contract, if unknown to the other contracting party, and no advantage is taken of the lunatic. (*Molton* v. *Cameron*, 4 Exch. 17; *S. C.*, 12 Jur. 800; *Campbell* v. *Hooper*, 3 Smale & Giffard, 153; *S. C.*, 1 Jur. [N. S.] 670; 17 Law Reg. 305; *Affleck* v. *Affleck*, 3 Smale & Gifford, 394.) To excuse non-performance of a contract it must appear that the thing to be done cannot, by any means, be accomplished. (*Beebe* v. *Johnson*, 10 Wend. 500.) Mere difficulty of performance is not enough. (*Blacksmith* v. *Fellows*, 7 N. Y. 401, 415.) Sickness, disabling a contracting party from performance in person, should not absolve him from performance through others where it was possible. (*Howell* v. *The Knickerbocker Life Ins. Co.*, 44 N. Y. 281; 2 Com. on Eq., § 1303.) This is not a case for equitable relief. (*N. Y. L. I. Co.* v. *Statham*, 3 Otto, 24, 30; 2 Story's Eq. Jur., §§ 1313, 1316, 1323; *Eaton* v. *Lyon*, 3 Ves. Jur. 690, 693; 1 Story's Eq. Jur., § 244, etc.; 1 Powell on Mort. 7, 250; *Kortright* v. *Cady*, 21 N. Y. 343; *Stoddard* v. *Hart*, 23 id. 560.) If there was power somewhere to revive the policy for cause, it was annulled by the failure to pay. (*Wall* v. *Home Ins. Co.*, 36 N. Y. 158.) The insured being dead the policy could not be revived. (*Tarleton* v. *Stainforth*, 5 Term R., 695; *Want* v. *Blunt*, 12 East, 183, 186; *Simpson* v. *The Accident Ins. Co.*, 2 Com. Bench [N. S.], 251; *S. C.*, 89 Com. L. 256; *Pritchard* v. *The Merchants' L. I. Co.*, 3 Com. Bench [N. S.], 622 and 91; Com. L. 619, 621, 641; *Wall* v. *Home Ins. Co.*, 36 N. Y. 157.)

MILLER, J. The complaint in this action sets forth alleged causes of action upon two separate policies of insurance, claiming to recover the amount named in each, and also alleges that a dividend was declared out of the surplus earnings and receipts of the company, for a portion of which the insured was entitled to a paid-up policy, which on demand was refused.

The demurrer to the complaint presents the question whether any cause of action is set forth therein.

The policies upon which this action was brought provided for the payment of an annual premium, and contained a condition as follows: " That this policy shall not take effect until the advance premium hereon shall have been actually paid, during the life-time of the insured, and that if any subsequent premium on this policy be not paid when due, then this policy shall cease and determine (except as hereinafter provided), and this company shall not be liable for the payment of the sum insured herein, nor of any part thereof." The annual premium due on the 28th of October, 1873, was not paid; the complaint alleges, and upon demurrer it must be taken as true, that previous to the day last mentioned, Vose, the insured, became and was by the visitation and act of God insane, and consequently unable to and did not pay the premium, although he had means to pay the same; but he was bereft of his reason and so continued until his death which occurred March 17, 1874, and in consequence thereof did not know nor remember that said premium was then due, nor that he had agreed to pay the same.

Vose having died without a payment of the premium, according to the terms of the contract, the question arises whether his insanity is an excuse for non-payment and the forfeiture is thereby waived. Courts of equity will relieve against a forfeiture in many cases, but none of the decisions have gone to the extent of holding that insanity will constitute an excuse for failing to comply with the terms of the condition referred to. In *Rose* v. *Rose* (Amb. 332), Lord HARDWICKE, laid down the rule thus: " Equity will relieve against all penalties whatsoever; against non-payment of money at a certain day; against forfeitures of copyholds; but they are all cases where the court can do it with safety to the other party; for if the court cannot put him into as good condition as if the agreement had been performed, the court will not relieve." Even if a condition subsequent becomes impossible by the act of God, or of the law, or of the obligee, etc., the estate will not be de-

feated.   (Co. Litt. 206 *b*.)   The defendant here could not well be placed in as good a condition as it had been by the payment of the premium after a forfeiture, for by such payment it would be compelled to pay the amount named in the policies, thus adding to its obligation.

So also where the contract is for personal services, which none but the person contracting can perform, inevitable accident, or the act of God, will excuse non-performance.   But when the thing or work to be performed may be done by another person, then all accidents are at the risk of the promisor. (Story on Bailments, § 36 and notes; *Wolfe* v. *Howes*, 20 N. Y. 197; *Clark* v. *Gilbert*, 26 id. 279; *Spalding* v. *Rosa*, 71 id. 40.)   In the present case, the condition did not require the insured himself to pay the premiums, and it could have been done quite as well by any one on his behalf.   After Vose became insane he was not really the party in interest.   He had assigned the policies to his children, and they were the parties interested therein and to be affected by a failure to perform the condition of the contract.   Although Vose was their guardian, if incapacitated by his insanity a competent person could have been appointed in his place; and hence his insanity was not necessarily an insuperable obstacle to their performance of the condition of the policy, and they were not relieved thereby. So long as the act could be performed by any other person, its performance did not depend upon Vose's continued capacity; and although rendered incapable by his insanity, the case is not within the rule which relieves a party from the consequences of an omission to do an act rendered impossible by omnipotent power.   (Broom's Legal Maxims [6th Am. ed.], 178, 179; *Howell* v. *Knickerbocker Life Ins. Co.*, 44 N. Y. 276.)

While as a general rule, where the performance of a duty created by law is prevented by inevitable accident, without the fault of a party, the default will be excused, yet when a person by express contract engages absolutely to do an act not impossible or unlawful at the time, neither inevitable accident, nor other unforeseen contingency not within his control, will excuse him, for the reason that he might have provided against them

by his contract. (*Dexter* v. *Norton*, 47 N. Y. 62; *Harmony* v. *Bingham*, 12 id. 99, 107; *Tompkins* v. *Dudley*, 25 id. 275.) The principle thus established has been especially applied in reference to policies of insurance, where the payment of the premium is held to be a condition precedent which must be kept or the policy falls. (*Roehner* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 160; *Evans* v. *U. S. Life Ins. Co.*, 64 id. 304; *Beebe* v. *Johnson*, 19 Wend. 500.) In the case last cited, it was laid down that to excuse non-performance, it must appear that the act to be done could not by any means have been accomplished.

The learned counsel for the plaintiff seeks to distinguish 63 N. Y. 160 and 64 id. 304, above cited, from the case at bar; but we are unable to perceive any such difference as prevents an application of the principle decided in these cases, and we think that they are directly in point upon the question discussed. Reliance is also placed upon the decisions of this court in *Cohen* v. *The N. Y. Mut. Life Ins. Co.* (50 N. Y. 610) and *Sands* v. *The N. Y. Life Ins. Co.* (id. 626), to sustain the theory of the plaintiff. Those decisions hold that the occurrence of war between two States forbid and excused the transmission and payment of premiums on the policies then in question from one State to another, and legally excuses their payment; and as the premiums could not be paid as they fell due, they were suspended, and a tender, after the termination of the war, with interest, renewed the policies. This condition of affairs arises from the belligerent attitude between the hostile States, which rendered it impracticable to comply with the terms of the contract. War necessarily prevented communication between the citizens of such States; and as it existed without the fault of the insured, in the cases cited, and for that reason no intercourse could be maintained for business purposes, the insured were not in any sense in fault for a failure to comply with the conditions contained in the policies in question. As it was impossible for either one of the insured to pay the premium required, or to procure any one else to do so upon his behalf, there is no satisfactory reason why he should not be excused. This rule,

which is well settled by the law of *nations*, rests upon grounds of public policy by which contracts between belligerent States are suspended during the war, but are not annulled. This doctrine is founded upon the principle that the State, and not the individual, wages the war. (Phill. Int. Law, 666; Wheat. Int. Law [8th ed.], 403, § 317.) The cases cited are not analogous: for while here the individual can pay or provide for payment through another, in case of war he is entirely helpless to fulfill and carry out the contract, and at the mercy of the government. The authorities of the hostile States have placed it beyond his control, suspended all intercourse, stopped all business relations, and laid a heavy arm upon all communications between their citizens. As there is no ability to fulfill, no means of paying, the justice and propriety of the rule is apparent, while its application in the case at bar cannot be upheld upon any such ground. There is, we think, a wide distinction in principle recognized in the books between inability to fulfill the terms of the contract, where, by the act of two governments war intervenes and prevents a fulfillment, and where the default arises from a duty or charge which has been assumed by the party and is capable of fulfillment either by himself or by another on his behalf.

While a court of equity will interpose its power to relieve against forfeitures for a breach of a condition subsequent caused by unavoidable accident, by fraud, surprise or ignorance, in many cases, that power has never been extended so as to excuse a breach of a contract of this description arising from the disability of a party caused by sickness or insanity.

The case of *Baldwin* v. *The N. Y. Life Ins. Co.* (3 Bosw. 530), which is cited and relied upon by the appellant, involved no question as to the non-payment of the premium, but related to a provision in the contract whereby the insured was licensed to travel in prohibited localities, returning within a specified period, and was prevented by illness from performing the condition. It was analogous to contracts for personal services, to which reference has been had, and the authority has no application in the case considered. Besides it is overruled by *Evans*

v. *U. S. Life Ins. Co.* (*supra*).   In the case at bar, it is not claimed that the performance was strictly impossible, and therefore that it was excused by law or that equitable relief should be granted upon that ground; and we are unable to discover that a case is made out, within any acknowledged principle, which authorizes the interposition of a court of equity.

Nor is there any ground for claiming that, by the provisions of the contract, the intention of the parties was that the terms of payment should not be obligatory in case of unavoidable sickness or of insanity.   The law places a reasonable construction upon all contracts, but in cases of insurance policies, where the prompt payment of premiums is an important element of the business, and forms the basis of its calculation by the compounding of interest thereon, it is scarcely to be supposed that such payment can be waived, except in conformity with some established rule of law or by express agreement.

The claim of the plaintiff that the moneys in possession of the company belonging to .Vose, being dividends on the policies in question, should be applied in payment of the premiums falling due, is without merit, as such dividends would have been insufficient to pay the premiums due, even if applied. Nor were the company. bound to pay such dividends to the insured and notify him that the policy was forfeited if not applied.   The money was never demanded, nor any request made to apply the same; and hence the defendant was under no obligation to apply or to pay the dividends on account of the premiums.   The views expressed lead to the conclusion that no action lies to recover the amount named in the several policies mentioned in the complaint, or the dividends, and the demurrer must be sustained, unless *it* can be upheld upon some other ground.

The allegations in the complaint in regard to dividends which have been earned, and the refusal of the defendant to issue a paid-up policy, stand, we think, in a different position. The sixth condition of the policy provides : " That if, after the payment of two or more annual premiums upon this policy, the same shall cease and determine by default in the payment of

any subsequent premium when due, then, notwithstanding such default, this company will grant a 'paid-up policy' (payable as above) for such amount as the then present value of this policy will purchase as a single premium, provided that this policy shall be transmitted to and received by this company, and application made for such 'paid-up policy' within one year after default in the payment of premium hereon, shall first be made." The complaint shows that under this clause a dividend was declared out of the surplus earnings and receipts for the preceding year, on the 1st day of January, 1873, payable to its several policy-holders, and to Vose as one of them; that none of this has been paid, and it was still retained by the defendant, and was in its possession when the premium not paid became due and at the time of Vose's death. Three annual premiums had been paid upon the policies, and the provision cited entitled the insured or his assignees to the benefit of the dividends actually made. As the complaint avers that when the proofs of loss were presented to the defendant, the policy of $20,000 was transmitted to and received by it, and that it refused to grant a paid-up policy for such amount, as the then present value of the policy on the 28th day of October, 1873, the day when default was made, would purchase as a single premium, or to pay such amount, a cause of action is made out which entitles the plaintiff to relief. The facts stated establish a demand for a paid-up policy, within one year after default in payment of the premium, in the mode prescribed, and a refusal to comply with such demand. The fact that Vose was dead does not relieve the defendant from liability, as no such contingency by the terms of the policy is provided for as an excuse for not granting such paid-up policy. The conditions were, first, that two or more annual premiums should be paid; and, second, that the application should be made within one year after default. All this has been done, and the company were bound to comply with these conditions. Although the insured was dead, the right to a paid-up policy, or its value, remained to his assignees. If the insured had lived he was entitled to it, and his assignees succeeded to his right. The same

rule applies as when insurance companies, or their agents, have made contracts to issue policies which have neither been made out nor delivered. In such cases the loss is payable the same as if a policy had been actually issued and delivered. Although not very distinctly or precisely set forth, a cause of action was stated in substance which entitled the assignee of Vose to a paid-up policy or its equivalent. A refusal to perform this condition created a liability for the amount for which the paid-up policy might have been issued, and this was a good cause of action, for which the plaintiff was entitled to recover.

As the complaint contained distinct causes of action, and a demurrer to the whole complaint was interposed, and one of them is good and sufficiently pleaded, the result is that the judgment of the General Term should be reversed and that of the Special Term affirmed, with leave to the defendant to answer upon the usual terms.

All concur, except FOLGER, Ch. J., and ANDREWS, J., who being interested as policy-holders in the defendant, took no part.

Judgment accordingly.