MARY E. WHITEHEAD AND OTHERS, RESPONDENTS, *v.* THE NEW YORK LIFE INSURANCE COMPANY,. APPELLANT.

*Policy of insurance, taken out by a wife upon the life of her husband, can only be sur-rendered in the manner provided by the statutes* — 1858, *chap.* 187 — 1873, *chap.* 821 — *A party will be relieved from a failure to pay premiums where the omission was caused by the fraudulent act of the company — construction of the term " heirs of the insured " in a policy.*

One Mary A. Davis procured from the defendant at different times between 1850 and 1856 three policies of insurance upon the life of her husband, the company agreeing to pay the amount insured, to her upon her husband's death, and in case she died before him to pay it to her children. She died in 1868 leaving her surviving her husband and the plaintiffs, and a son since dead, her only children. In May and July, 1874, the husband, without the knowledge or consent of the plaintiffs, surrendered the policies to the defendant and received therefor certain sums of money. In making these surrenders he claimed to be acting as guardian of the plaintiffs, although he was in fact the guardian of but one of them, the others being of full age. The husband died insolvent in 1879. The plaintiffs having then learned for the first time of the existence of the policies notified the defendant of the death of their father, offered to pay the premiums unpaid and demanded the amounts due thereon.

In this action, brought to have the surrender set aside and to recover the amounts secured to be paid by the policies:

*Held,* that the surrender made by the husband was void, because not made upon the written request of the wife as provided in chapter 821 of 1873.

That as the facts of the case justified a finding that the company participated in, or was liable for the fraudulent acts of the husband, and thereby prevented the payment of the premiums accruing after the date of the surrender, the court had power to relieve the plaintiffs from the forfeiture occasioned, under the terms of the policies, by their failure to pay the said premiums.

One of the policies, was surrendered on May 8, 1874. All the premiums due on this policy were paid in full to December 6, 1873.

*Held,* that the company by accepting a surrender of the policy in May, and paying a sum of money therefor, treated it as existing and in force, and could not now claim that it had lapsed by reason of the failure to pay the December premium.

By one of the policies the company agreed to pay the sum insured to Mary A. Davis, or her legal representatives, but should she die before the insured then the insurance to vest in the heirs of the insured. The children of Mary A. Davis were all, also, children of her husband. The company claimed that the words "heirs of the insured" meant heirs of the husband, and that the policy was not protected by the statutes protecting policies issued to wives upon the lives of their husbands.

*Held,* that the claim was untenable.

APPEAL from a judgment against the defendant for the sum of $9,008.08, entered upon a decision at Special Term.

*William B. Hornblower,* for the appellant.

*C. Elliott Miner,* for the respondents.

HAIGHT, J.:

This action was brought to have the surrender and transfers of three policies of insurance upon the life of one George Davis, the father of the plaintiffs, set aside and declared void, and to have the policies declared valid and subsisting obligations of the defendant in full force and effect at the time of the death of George Davis, and to recover the amount of the policies, less unpaid premiums. The first policy is numbered 6,515, dated the 28th day of December, 1850. It insures the life of George Davis in the amount of $2,500 in consideration of the sum of eighty dollars paid by Mary A. Davis, wife of George Davis, for the benefit of herself. The company agreed to pay to her the sum insured, or her legal representatives, but if she should die before the insured, then the insurance to vest in the heirs of the insured. The annual premium to be paid was eighty dollars on the sixth day of December in each year. The second policy is numbered 7,103, dated June 10, 1851, for $5,000. It insures the life of George Davis in, consideration of $168.50 paid by Mary A. Davis his wife. The company agreed to pay to her on the death of her husband the sum insured, and in case of her death before his the amount should be payable to her children. The annual premium to be paid was the sum of $165.50 on the seventh day of June in each year. The third policy is numbered 11,402, dated November 24, 1856; it insures the life of George Davis in consideration of the sum of fifty-eight dollars and five cents paid by Mary A. Davis. The company agree to pay to her the sum of

$1,500 on the death of her husband, and in case of her death before his the amount of the insurance shall be paid to her children. The annual premium to be paid is the sum of fifty-eight dollars and five cents on the nineteenth day of November in each year. Each of the policies contains the clause that in case Mary A. Davis shall not pay the premiums on or before the several days mentioned for the payment thereof, then the company shall not be liable for the payment of the sum insured, or any part thereof, and the policy shall cease and determine. Mary A. Davis died October 16, 1868, leaving her surviving her husband, George Davis, the plaintiffs and George Davis, Jr., her only children, who were also the children of her husband George Davis. George Davis, Jr., died September, 1874, and the plaintiff Henry L. Davis was appointed administrator. On the 8th day of May, 1874, George Davis, without the knowledge or consent of the plaintiffs, surrendered to the defendant policy number 6,515 and received therefor the sum of $588.14. All the premiums due on this policy were paid in full to December 6, 1873. On the sixteenth day of May, George Davis, without the knowledge or consent of the plaintiffs, surrendered to the defendant policy number 7,103 and received therefor the sum of $1,557.46. All the premiums upon this policy were paid in full to a period beyond the date of its delivery to the defendant. On the 8th day of July, 1874, George Davis, without the knowledge or consent of the plaintiffs, surrendered to the defendant policy number 11,402 and received therefor the sum of $355.68. All of the premiums upon this policy were paid in full to a period beyond the date of its delivery to the defendant. In making these surrenders George Davis assumed to act as the guardian of the plaintiffs, but in truth and in fact he was not the guardian of any of the plaintiffs except Julia N. Davis, the rest being adults over twenty-one years of age. On the 23d day of July, 1879, George Davis died insolvent. Neither of the plaintiffs knew of the existence of these policies of insurance, or of either of them, or of their surrender to the company by their father until after his death. In October, 1879, notice was given to the company of the death of George Davis, and before the commencement of this action the plaintiffs offered to pay the premiums unpaid upon the policies, according to their terms, and to furnish the company with proofs of the death of

George Davis, but the company refused to accept the premiums asserting that the policies had been purchased by them and were no longer in force.

Chapter 277 of the Laws of 1870 provides that "it shall be lawful for any married woman, by herself, and in her name * * * to cause to be insured for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving such period or term, the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of the husband or of any of his creditors; or any party or parties claiming by, through or under him. The amount of the insurance may be made payable in case of the death of the wife before the period at which it becomes due to her husband or to his, her or their children, for their use as shall be provided in the policy of insurance.

Chapter 821 of the Laws of 1873 provides that "any policy in favor of a married woman or of her and her children, or assigned in her or in her and their favor, on written request of said married woman, duly acknowledged before a commissioner of deeds or other officer authorized to take acknowledgments of deeds in the same manner as required by law to pass her dower right in lands of her husband, and on the written request of the policy-holder, may be surrendered to and purchased by the company issuing the same in the same manner as any other policy."

Here we have an express legislative authority authorizing the wife to insure the life of her husband for her own benefit and, in case of her death, for his, her or their children; and the manner in which such policy may be surrendered up and purchased by the company. The surrender must be upon the written request of the wife, duly acknowledged before an officer in the same manner that deeds are required to be acknowledged in order to pass a dower interest of the wife. The policy of insurance to a married woman, made under the statute, for her benefit and that of her children in case of her death, cannot be surrendered or transferred so as to divest the interests of the wife or her children in any other manner than that pointed out by this statute. (*Eadie* v. *Slimmon*, 26 N. Y., 9.)

It is doubtless true that an individual may cause his own life to be insured for the benefit of a brother, sister or other person, and that upon the death of such person, the insured may surrender or dispose of the policy, but such cases are not within the provision of the statute cited, and are clearly distinguishable.  In the case under consideration the applications for the insurance were made by the wife through her husband, who acted for her as her attorney. The consideration for the policies were paid by her as appears from the recitals in the policies.  The insurance was for the benefit of herself and in case of her death, that of her children.  Her husband had no interest in the policy which he had a right to surrender or dispose of ; and of this the company was well aware at the time it accepted from him the surrender of the policies.  If he was authorized to act for her as her agent in procuring the policies and in making the payments of the premiums thereon, such agency terminated with her death and no longer existed at the time these policies were surrendered.

The appellant claims that the plaintiffs have no interest under the first policy.  That that policy is different from the other two in this, that it provides that in case of the death of Mrs. Davis before that of her husband, that then the amount of the policy goes to *the heirs of the insured* instead of her children, as provided in the other policies.  That *the heirs of the insured* means his heirs and not hers, and for this reason the policy is not protected by the statute referred to.  We are of the opinion, however, that there is nothing in this point.  The undisputed evidence shows that the plaintiffs were his children as well as hers.  They are his heirs at law.  If they were not in fact his children, it is possible that the policy would require a different construction, but inasmuch as they are, they seem to come within the express provision of the statute.

Again, the appellant claims that inasmuch as the policy is payable to the heirs of the insured such heirs are not vested with any interest in the policy until the death of the insured, and numerous authorities are cited by him in support of this proposition.  But this question we deem settled by the policy itself.  It provides that should Mrs. Davis die before the insured "then this insurance to vest in the heirs of the insured."  Here is an express provision of

the contract vesting the insurance in the plaintiffs, not at the death of Davis but at the death of Mrs. Davis.

Again, it is claimed on the part of the appellant that this policy had lapsed before its surrender by reason of the non-payment of the premium falling due December 6, 1873.

This would doubtless be the case were it not for the fact that the company subsequently and on the 8th day of May, 1874, treated the policy as still in force by accepting its surrender and paying a sum of money therefor. The fact that the company then treated the policy as in force leads us to presume that the default in the payment of the premium had been excused or postponed by some arrangement between the parties. We are, therefore, unable to see any reason for distinguishing this policy from the others, or of applying a different rule in determining the liability of the defendant thereon.

This brings us to consider the question raised by the appellant affecting all of the policies. After the surrender no further annual payments of premiums were made. For this reason it is claimed that they have lapsed. The question is thus presented as to whether or not the respondents can be relieved against forfeitures for a breach of this condition of the policies. It appears that neither of the plaintiffs had any knowledge of the existence of the policies until after the death of their father. The rule is that a court of equity will interpose its power to relieve against forfeitures for a breach caused by unavoidable accident, fraud, surprise or ignorance. (*Wheeler* v. *Connecticut Mutual Life Ins. Co.*, 82 N. Y., 543, 552.)

Whilst sickness or insanity is not sufficient to excuse a default, yet war existing between the States in which the company is located and the assured resides, so as to prevent the transmission of the premium, fraud on the part of the company, surprise or ignorance in many cases, is a ground upon which a court of equity may relieve against forfeitures. (*Barry* v. *Brune*, 71 N. Y., 262; *Cohen* v. *New York Mutual Life Ins. Co.*, 50 id., 610; *Sands* v. *Same*, Id., 626; *Leslie* v. *Knickerbocker Life Ins. Co.*, 63 id., 27; *Douglas* v. *Knickerbocker Life Ins. Co.*, 83 id., 504.)

The gravamen of the action in this case is fraud on the part of the defendant and George Davis. If fraud in fact existed and such

fraud tended to prevent the payment of the premiums, we are of the opinion that the court may properly grant the relief asked for. We have already shown that the surrender of the policies was unauthorized and unlawful. The company knew from the policies that they were payable to Mary A. Davis, or in case of her death to her children. It must have known that Mary A. Davis was dead from the fact that in accepting the surrender of the policies it took receipts for the money paid from George Davis as guardian of the plaintiffs. The company, therefore, knew that it was dealing with a person who had no interest in the policies, or, right to surrender them unless he was in fact the guardian of the children. That he was not guardian, could have been easily ascertained. If he was guardian it was a matter of record and it was the duty of the company to have ascertained the facts in this regard. Knowing that the insurance vested in the plaintiffs, the company, in treating with Davis in reference to the surrender of the policies, did so at its peril, and if fraud was practiced on the children it became a party to the fraud. Mary A. Davis, by her contracts with the defendant and the payment of the annual premiums upon these policies, had secured to her children upon her death a valuable interest amounting to several thousand dollars. All but one were over age. If they had had possession of the policies or knowledge of their existence they might have caused the annual premiums to have been paid, and thus have secured this interest on the death of their father. The effect of the surrender of the policies was to cut off and destroy their interests. George Davis, in consideration of the moneys paid to him on the surrender of the policies, was induced to hide and keep secret from his children the existence of the policies, and of his own attempt to cheat them out of their interest in the same. The company, by procuring the policies to be surrendered to it, prevented the possession of the instruments from falling into the hands of the children, and thus conveying to them the knowledge of their existence. If George Davis had not been paid a sum of money to surrender the policies, he would have had no motive in keeping the knowledge of their existence from the plaintiffs. If they had had knowledge of the existence of the policies they then could have paid the premiums.

It further appears that these were old policies. That the sum of

$6,691.40 had been paid to the company in premiums thereon. That for the surrender of the policies the company only. paid the sum of $2,671, only about one-third of the amount that it had received in premiums. It further appears that after the death of George Davis some of the plaintiffs sought information of the company in reference to the policies, that the company withheld and refused to give full and true information as to the manner in which they were surrendered. These facts became circumstances in the case tending to support the claim of the plaintiffs.

The case is somewhat peculiar and we have been unable to find any reported case precisely in point. Yet, from well recognized principles, we are of the opinion that, under the circumstances of the case, the plaintiffs should be relieved from the forfeitures claimed, and that the judgment should be affirmed, with costs.

So ordered.

DANIELS, J., concurred; DAVIS, P. J., taking no part.

Judgment affirmed, with costs.