ROLAND R. DENNIS, APPELLANT, *v.* THE MASSACHU-
SETTS BENEFIT ASSOCIATION, RESPONDENT.

*Certificate of insurance — construction of a rule providing for the reinstatement of a defaulting member "for valid reasons" — when the validity of the reason should be submitted to a jury.*

The defendant issued to one J. L. Dennis a certificate of membership, to which were annexed rules and conditions, one of which required that the members should, within thirty days after the mailing of a notice of an assessment, pay the same, and provided that if the assessment should not be received by the company within that time, the contract should lapse and be void, but that

" for valid reasons to the officers of the association (such as a failure to receive notice of an assessment), he may be reinstated upon paying assessment arrearages."

On February 12, 1886, a notice of an assessment was mailed to Dennis and received by him, but was not paid within the thirty days, Dennis being stricken with apoplexy on March eighth (the twenty-fourth day after the notice was mailed) and remaining unconscious until March nineteenth, when he died. The beneficiary, on March thirty-first, tendered the arrearages to the company, which declined to receive them and refused to be bound by the policy.

Upon the trial of this action, brought by an assignee of the beneficiary, the court directed a verdict in favor of the defendant.

*Held,* that it erred in so doing , that the question as to whether the fact that the party assessed, who had paid many previous assessments, was rendered powerless by a sudden calamity before the expiration of the thirty days, was not a " valid reason " within the meaning of the contract, should have been submitted to the jury. (DYKMAN, J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered upon the verdict of a jury at the Dutchess County Circuit, directed to be rendered in its favor by the court, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought by the plaintiff as the assignee of Annie E. Dennis, widow of J. Fred. Dennis, to recover the sum of $5,000, claimed to be due upon a certain policy of insurance or certificate of membership issued by the defendant.

*Prescott Hall Butler* and *Treadwell Cleveland,* for the appellant.

*John A. Mapes,* for the respondent.

BARNARD, P. J.:

The case shows that the defendant issued a certificate of membership to one J. F. Dennis. There were rules and conditions annexed to the certificate which were a part of the contract. Whenever a death should occur, the member holding the certificate was required to pay an assessment. The rules required that members should within thirty days after mailing of a notice of an assessment pay the same, and if the assessment should not be received by the company within that time, the contract should lapse and be void. An assessment was made and notice was mailed to this member and he did not pay within the thirty days. On the twenty-fourth day after the notice was mailed the assured was stricken suddenly with apoplexy.

He was rendered unconscious instantly and so remained, entirely unconscious until his death, which occurred on the 19th of March, 1886. If this were all, there would be no question. The contract would be at an end because the Court of Appeals has decided that insanity did not excuse the non-performance of the condition. (*Attorney General* v. *The N. A. Life Ins. Co.*, 82 N. Y., 190.) The rule however which creates the annulment of the contract for non-payment of assessment also provides that " for valid reasons to the officers of the association (such as a failure to receive notice of an assessment) he (the defaulting member) may be reinstated by paying assessment arrearages." The death of the member is not important. Whatever right he had if living ennured to his beneficiary after his death. (*Wheeler* v. *The Connecticut Mutual Life Ins. Co.*, 82 N. Y., 543.)

What right would the member have had if he had recovered his reason on the day he died. In the first place the words were intended to be operative. The defendant obtained the premiums or agreement to pay assessments upon them. They assured the members that if a valid reason was furnished for the default it should not be conclusive. The use of the restrictions as to the validity of the excuse to the officers of the company did not mean to make them sole arbiters of the validity of the reason. The company illustrate by citing an instance of a good excuse by the term " such as a failure to receive notice of an assessment." If an assessment notice had not been received without the fault of the member, can it be doubted but that the officers were bound to acknowledge it and reinstate the member upon payment of arrearages? The company say that is a good excuse and impliedly say that other good reasons for the default must be acknowledged also. The Court of Appeals have decided that a discretion given to trustees is not personal. (*Hull* v. *Hull*, 24 N. Y., 647 ; *The Duplex Boiler Co.*, v. *Garden*, 101 id., 387.)

Is the reason assigned a valid reason under the contract? There can be no doubt of this fact. The assessed had thirty days and before he paid the assessment he was rendered powerless by sudden calamity — his intent to pay is manifest by numerous previous payments. This was the construction put on the rule by the defendant. They again, after he was unconcious, notified the member of the

forfeiture for non-payment and that the contract might be renewed: if in good health. This condition, in respect to good health, is not in the rule and the officers had no right to add it to the rule. If a valid reason existed for the default the member must be reinstated, because of the valid reason for the default and not because he had a valid reason and was in good health. The rule, as created by the company in this respect, would exclude cases where it was vital that they should be included in the contract. If the good reason was rejected in cases of ill health or death the insured will lose a real value in the contract. If members become sick or die the policy is at an end, no matter how completely the default may be. excused. This would make a very unfair contract, not within the words of the rule and one which the company would be unwilling to print in its rules. We, therefore, think that the validity of the reason assigned should have been submitted to the jury. The proof shows that the beneficiary at once tendered the back arrearages to the company. On the thirty-first of March the defendant repudiated their liability, and on the seventh of April reiterated their refusal to be bound by the policy by denying all liability under it. A formal tender was made early in May, 1886, accompanied by proof of death. The plaintiff has succeeded by assignment to the wife's rights. The plaintiff is entitled to recover, therefore, if the wife and beneficiary was entitled.

The judgment should, therefore, be reversed, and a new trial granted, costs to abide event.

PRATT, J., concurred.

DYKMAN, J. (dissenting):

The defendant is a foreign corporation, organized under the laws of the State of Massachusetts, with its principal office or place of business in the city of Boston, in that State. In legal effect, it seems to be a life insurance association, but the policies issued differ in some respects from the ordinary policies issued by life insurance companies. They are denominated certificates of membership. On the 3d day of August, 1883, this association issued and delivered to J. Fred. Dennis a certificate constituting him a benefit member thereof; and agreed, by its terms, to pay to Annie C. Dennis, his wife, after due proof of his death, a sum equal to the amount

received from a death assessment, not exceeding $5,000. That certificate was made and issued subject to many conditions, and among them are these:

" *Second:* Upon the death of any member the said party to whom this certificate is issued shall at once pay, if required, to its treasurer, an additional assessment of six dollars and seventy-five cents.

" *Third.* The form of notice to and process of collection from each of the members of the above assessment above named shall be as follows: A notice shall be sent announcing such assessment, and the number thereof, to the last post-office address given to the association by each member; and if the assessment is not received within thirty days from the mailing of said notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void; but said party may again renew his connection with the association by a new contract made in the same manner as the first; or for valid reasons to the officers of the association (such as a failure to receive notice of an assessment), he may be reinstated by paying assessment arrearages.

" *Seventh.* A failure to comply with the rules of said association, as to payment of assessments,   *   *   *   shall also render this certificate void."

Subsequent to the issuance of the policy several assessments were levied upon the assured, and paid; and on the 13th day of February, 1886, an additional assessment of six dollars and seventy-five cents was levied upon him for the death of twelve members, and there is no dispute about the legality or propriety of such assessment. Notice of this assessment was mailed to Dennis, the assured, from Boston, on the 12th day of February, 1886, and was received by him and found among his papers after his death, but the assessment was never paid. On the 8th day of March, 1886, twenty-four days after the notice of assessment was mailed from Boston, Dennis, the assured, was stricken with apoplexy, and remained unconscious until the nineteenth day of March, when he died.

Proof of death was presented to the company, and a tender was made of the amount of the assessment, but payment was refused. The claim was then assigned to the plaintiff, who commenced this

action for its recovery.   When the cause was brought to trial the complaint was dismissed, and the plaintiff has appealed.   The action was prosecuted and sought to be maintained upon the theory that the assured in the policy was excused from the performance of the condition of his policy, requiring payment of his assessment in thirty days after mailing notice to him of the same, by the act of God, and we are, therefore, required to ascertain how far such contention can attain recognition.

The stroke of doom which prostrated the deceased and rendered him unconscious until his death must be recognized as the act of God, in the usual legal significance of that term.   It was distinct from inevitable accident, and arose from natural causes, independent of human agency.   Sudden illness and death being both inevitable, have always been recognized as acts of God.   But inevitable visitations are not accepted in law as excuses for the failure to perform contracts and conditions in all cases indiscriminately.   When the contract or condition requires personal service, which can be rendered or performed only by the party personally, inevitable accident or the act of omnipotent power, will excuse a failure of performance.   (*Wolfe* v. *Howes* 20 N. Y., 197.)   But where a party absolutely assumes the performance of a feasible and lawful contract or condition which may be executed and discharged by another, then no unforeseen contingencies will relieve him from the consequences of an omission of performance.   (*Dexter* v. *Norton,* 47, N. Y., 62.)   These principles have been deduced from a long and continuous line of authority, and have received frequent recognition and application by the highest court of our own State, and they are decisively against the contention of the plaintiff in this action.   Neither the policy nor the condition in this case required the premiums or assessments to be paid by the assured personally, and they might both be paid by any other person in his interest. Neither his severe visitation nor his subsequent unconscious condition presented any obstacle to the performance of the condition by the payment of the last assessment by his wife, for whose benefit the insurance was effected, and the case seems to fall easily under the authority of the case of *Wheeler* v. *Connecticut Mutual Insurance Company* (82 N. Y., 544).

The plaintiff also insists that the sudden deprivation of reason, and

final death of the party assured, created a valid reason for excusing the non-payment of the assessment, and reinstating the policy, but we cannot concur in that view. The valid reasons for reinstatement contemplated by the third condition are to be addressed to the officers of the association, and not to the courts. The nature of the reasons which may induce reinstatement by the officers are indicated to be such as a failure to receive notice of an assessment, and if such reasons prevail with the officers, the member may be reinstated.

The provision for reinstatement therefore presupposes an arrangement or ceremony which shall restore and revive the forfeited policy and continue the membership of the insured, and that cannot be accomplished after his death. It was designed to afford an opportunity for the presentation to the officers of the association, by a member whose policy had lapsed and become void, of equitable considerations and reasons which might induce a restoration and reinstatement to membership of the living member. Neither can we yield assent to the proposition of the plaintiff that the termination of the contract of membership was predicated upon the intention of the insured. The continuation of the membership depended upon the performance of the condition and not upon the intention to perform. A failure to comply with the rules respecting payment rendered the certificate void *ipso facto*. The condition of the policy quoted makes the omission to pay the assessment evidence of the intention of the party to withdraw from the association, and stipulates for the termination of the connection thereupon, and that the contract of the party with the association shall lapse and be void. As, therefore, there was in this case the evidence of intention for which both parties stipulated, coupled with the failure to pay, the two events had transpired which wrought the forfeiture of the policy. Respecting the statutes of the State of Massachusetts, it is sufficient to say the action is not prosecuted under such statutes and the relief demanded is not founded upon them, but the action is based on the policy and judgment is demanded for the full amount thereof.

The judgment and order appealed from should be affirmed, with costs.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.