ROBINSON et al. v. POSTAL LIFE INS. CO.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 58.

INSURANCE (§ 678*)—NEW INSURANCE—OFFER—CONSTRUCTION.

An insurance company having passed into the hands of receivers, they secured an offer from defendant to issue new policies to such holders of insurance in the insolvent company on a specified date as might accept the terms of the proposal, which contained an article providing that the receivers did not affect the rights or interests of any policy holder in the old company, or assignee thereof, or beneficiary named therein; the word "policy holder" being used to mean the person whose life is insured under any policy, and being subject in case of impairment of health to a new examination and an impairment lien. *Held*, that such clause should be construed to mean that nothing in the agreement between the receivers and defendant should affect the rights of any one under the insolvent company's policies, be he the insured, his assignee, or beneficiary, and as the right to new insurance arose, not out of the policies in the insolvent company, but out of the agreement between defendant and the receivers, it was limited to the policy holder himself, and hence could not be accepted for an insane policy holder by his guardian, under the order of the court having jurisdiction of the guardianship.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1810; Dec. Dig. § 678.*]

Appeal from the District Court of the United States for the Southern District of New York.

William S. Maddox, of New York City, for appellant.
J. T. McGovern, of New York City, for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. The complainants, citizens of the state of Missouri, are executors of Edward I. Robinson, deceased, who took

out on February 1, 1902, a policy of insurance on his life known as a "legal reserve" policy of the Mutual Reserve Life Insurance Company, a corporation of the state of New York, for $10,000, payable to his executors or administrators. February 15, 1908, the company went into the hands of receivers appointed by the Circuit Court for the Southern District of New York. After that event individuals insured in the company could not, on account of their greater age, get new insurance, except at higher rates of premium. Therefore, to protect their interests, the receivers sought to find a company which would be willing, in consideration of getting a large body of policy holders, together with the books and good will of the Mutual Reserve Company, to give them its policies in the New York standard form of the same date, amount, and rate of premium as their own. Subsequently they did make such a contract with the Postal Life Insurance Company. It recites:

"This agreement, entered into this first day of June, 1908, in the city of New York, between the Postal Life Insurance Company, a corporation organized and operating under the laws of the state of New York and with its home office at Nos. 525–527 Fifth avenue, New York City, borough of Manhattan, and William Hepburn Russell and Charles E. Rushmore, as receivers, appointed by the Circuit Court of the United States for the Southern District of the state of New York, of the funds, property, and assets of the Mutual Reserve Life Insurance Company, witnesseth:

"The Postal Life Insurance Company hereby proposes to insure such of the policy holders of the Mutual Reserve Life Insurance Company who were residents in the United States of America at the time such policies were issued and whose policies were issued after the seventeenth day of April, 1902, upon what is known as the 'legal reserve' plan, and were in force on the fifteenth day of February, 1908, when said receivers were appointed, as may accept the terms and this proposal in accordance with the conditions thereof, which are as follows:

"First. This agreement constitutes on the part of the Postal Life Insurance Company an offer to each such policyholder to insure him on the terms herein set forth."

The sixteenth article was as follows:

"Sixteenth. It is understood that the receivers do not by implication or otherwise affect the rights or interests of any holder of any policy issued by the Mutual Reserve Life Insurance Company, or assignee thereof, or beneficiary named therein. The words 'policy holder,' wherever used in this agreement, mean the person whose life is insured under any policy."

In pursuance of this agreement the Postal Company sent out notices with appropriate forms of application to all persons insured under legal reserve policies of the Mutual Reserve Company, explaining that upon application, accompanied by the surrender of their policies and assignment of their interest in the assets of the Mutual Reserve Company to be applied on the reserve of their policies, and in case of impairment of health with consent to a new examination and an impairment lien, its policies would be issued to them of the same date, amount, and rate of premium. When these papers were received by Edward I. Robinson, he was in a sanitarium, and was subsequently, July 17, 1908, declared to be of unsound mind by a competent court of the state of Missouri, which appointed his son, William B. Robinson, to be guardian of his person and estate. Upon the same day the court

authorized the guardian to accept the offer of the Postal Company on behalf of his ward and to that end to execute all necessary papers on his behalf. Thereupon the guardian, in his own name as guardian of Edward I. Robinson, did make and execute the application for a policy in the Postal Company on the life of his ward, subject to an impairment lien on account of changed condition of health, which he forwarded, together with the Mutual Reserve policy and an assignment of all his ward's rights against that company's assets and its receivers, to the Postal Company. That company refused to recognize the application and accompanying documents on the ground that they were not executed by Edward I. Robinson; he being the person whose life was insured under the Mutual Reserve policy and the only person entitled to accept the Postal Company's offer.

April 10, 1909, Edward I. Robinson died, and letters testamentary were duly issued to the complainants as executors of his last will and testament by a competent court of Missouri, and subsequently ancillary letters by the Surrogate's Court of New York county. It is stipulated that the amount due the complainants, if any, is $3,669.93 with interest from June 10, 1909. The District Judge was of opinion that, though the guardian did not come literally within the offer of the Postal Company, still it should be construed to include him for the following six reasons:

"First. It must be remembered that there was nothing here required of the assured that a guardian could not do for him. Second. The insurance risk of a lunatic, though no doubt a bad one, was certainly no worse than many others which the defendant must necessarily have intended to cover by virtue of its impairment lien. Third. The proposal being to take all the policy holders of the defined classes as they stood, including impaired lives of any sort, any actuary would at once have seen that a percentage of lunatics must be included within the general terms used. If so, some exclusion of them seems reasonable, if so intended. Fourth. Where in the contract a limitation was intended, it was expressed; for example, those under 60 years of the 'contract reserve' policy holders. Fifth. While the sixteenth clause is intended to prevent insurance by assignees and those who insure the lives of others, it can hardly, without violence to its obvious purpose, be held to exclude, without any sufficient reason, from the included classes any one whose life in fact had been insured. Sixth. The offer is subject to the canon contra proferentem."

We think the court erred in respect to the most material of the above reasons, to wit, in saying that the Postal Company took over all the Mutual Reserve legal reserve policy holders with certain immaterial exceptions. On the contrary, the offer was to such of "the policy holders * * * as may accept the terms of this proposal in accordance with the conditions thereof." One of the conditions was:

"The words 'policy holder,' wherever used in this agreement, mean the person whose life is insured under any policy."

That person in this case was Edward I. Robinson, who did not, and, being of unsound mind, could not, accept the proposal. Conceding that what the learned judge suggests would be reasonable, we cannot, therefore, alter the offer as actually made. We must take it as we find it, and enforce its terms, because they read without ambiguity.

No doubt the guardian, by virtue of the appointment of the Mis-

souri court, had a right to collect and dispose of his ward's policy in the Mutual Reserve Company and to protect all his rights under it. Wheeler v. Insurance Co., 82 N. Y. 543, 37 Am. Rep. 594. But the election in question does not arise out of that policy, but out of the agreement with the receivers, whose terms the Missouri court could not alter. The purpose and meaning of the first sentence of clause 16 was, we think, that nothing in the agreement between the receivers and the Postal Company was intended to affect in any respect the rights of any one under the Mutual Reserve Company's policies, be he the insured, or his assignee, or beneficiary.

Decree reversed.