WILLIAM MATTHEWS, as Executor of CAROLINE SILVERNAIL, Deceased, Appellant, *v.* AMERICAN CENTRAL INSURANCE COMPANY, Respondent.

1. FIRE INSURANCE — LOSS AFTER DEATH OF ORIGINAL INSURED — NOTICE AND PROOFS OF LOSS. A policy of fire insurance which provides that the "insured" shall give "immediate notice of any loss," and "within sixty days after the fire" shall furnish proofs of loss "signed and sworn to by said insured," and that the word "insured" shall "be held to include the legal representatives of the insured," is to be considered in the light of what may reasonably be presumed to have been within the contemplation of the parties, as to the possibility of literal performance in case of a fire occurring after the death of the original insured and before any opportunity to have a legal representative appointed by the surrogate.

57

2. LITERAL COMPLIANCE WITH POLICY IMPOSSIBLE — LEGAL REPRESENTATIVES OF INSURED. Where literal compliance with the provisions of the policy as to giving notice and furnishing proofs of loss is impossible for the reason that no legal representative of the deceased insured had been appointed by the surrogate at the time of the fire, it is incumbent upon those interested in the policy to make reasonable efforts to see that the covenants are kept and, within a reasonable time, to use such agencies as the law provides, in order that they may be kept, if possible.

3. NON-APPOINTMENT OF EXECUTOR — TEMPORARY ADMINISTRATOR. Inability to procure the appointment of an executor of the original insured with ordinary promptness, by reason of a contest over the will, does not excuse delay in giving notice, furnishing proofs of loss, and commencing suit upon the policy, where those interested in the policy made no effort to obtain the appointment of a temporary administrator.

4. POWERS OF TEMPORARY ADMINISTRATOR. A fire insurance policy, after a loss has occurred, is a chose in action, and a temporary administrator can collect the same and, if necessary, commence an action for that purpose (Code Civ. Pro. § 2672); and this right to collect carries with it the right to serve all such notices as the policy required, in order to make it collectible.

5. LEGAL REPRESENTATIVES OF INSURED. The assumption that the "legal representatives of the insured," referred to in the policy, included the heirs at law, next of kin, legatees and devisees, as the case may be, affords no support to a late action upon the policy, brought by an executor whose appointment had been delayed, for a loss which occurred after the death of the original insured, in the absence of timely service of notice and proofs of loss, where it appears that upon that theory there was no time when competent persons, sustaining one or more of those relations to the decedent, with full knowledge of all the facts, could not have given the notice and furnished the proofs of loss.

6. LATE ACTION UPON POLICY. Evidence that notice and proof of a loss which occurred after the death of the original insured were given as required by the policy will not support an action on the policy by an executor whose appointment was delayed by a contest over the will, when the action was not begun until after the time limited for that purpose by the policy had elapsed, and no lawful reason is given for not procuring temporary administration in time to have sued within the stipulated period.

7. OBSTACLES TO PERFORMANCE OF CONDITIONS PRECEDENT TO RECOVERY UPON POLICY. If there are obstacles to the performance of conditions precedent to a recovery upon an insurance policy, the party interested in the policy must make a reasonable effort to remove them. If, after due diligence, they have proved insurmountable for a time, the delay will be excusable, and performance at the earliest practicable moment thereafter will be sufficient; but to excuse non-performance it must appear that the act to be done could not, by any reasonable means, have been accomplished.

8. Failure of Action upon Policy. An action to recover upon a fire
insurance policy, for a loss which occurred after the death of the original
insured, commenced after the lapse of the time limited for that purpose
by the policy, by an executor of the original insured, whose appointment
had been delayed by a contest over the will, cannot prevail, when it
appears that the failure to apply for a temporary administrator and to
endeavor through him to give the notices required by the policy and
essential to perfect the cause of action, and then to have suit brought
therefor within the period stipulated, was absolute and without excuse.

9. Exceptions Heard by Appellate Division in First Instance.
The Appellate Division of the Supreme Court is not authorized to dismiss
the complaint upon the merits, upon a motion for a new trial upon excep-
tions ordered to be heard by it in the first instance, under section 1000 of
the Code of Civil Procedure.

*Matthews* v. *American Central Ins. Co.*, 9 App. Div. 339, modified.

(Submitted October 22, 1897; decided December 7, 1897.)

Appeal from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
October 30, 1896, sustaining exceptions ordered to be heard
by that court in the first instance and dismissing the com-
plaint upon the merits.

On the first of August, 1889, the defendant issued its policy
·of insurance of the standard form to Mrs. Caroline Silvernail
whereby it insured her dwelling house, barn and the produce
therein against loss or damage by fire to an amount not exceed-
ing $1,050 for the term of three years from that day.   On
the second of December, 1891, Mrs. Silvernail died, leaving a
will in which the plaintiff was nominated as sole executor.
The probate of her will was opposed by some of her heirs,
and on the 20th of April, 1892, when the contest was still in
progress before the surrogate, a fire occurred, which destroyed
·a portion of the property insured, both real and personal.
On the 15th of May, 1894, the contest over the will resulted
in its admission to probate and the appointment of the plain-
tiff as executor.   July 11th, 1894, proofs of loss were sworn
to by the plaintiff and shortly thereafter mailed to the defend-
ant, which received them at the home office in St. Louis, July
23, 1894, and retained them without objection.   The loss not

having been paid, on the 29th of October following this suit was commenced upon the policy. The defendant pleaded as defenses that the action was not begun within twelve months next after the fire, although there was a limitation by contract to that period, that written notice of the loss was not immediately given, and that proofs of loss were not furnished within sixty days after the fire, as required by the policy.

Upon the trial, after the defendant's counsel had expressly stated that he did not ask to have any question submitted to the jury, the court, upon motion of the plaintiff, directed a verdict in his favor for the sum of $612, the admitted value of the property destroyed, with interest from the 23d of September, 1894, and ordered that the defendant's exceptions should be heard by the Appellate Division in the first instance, and that entry of judgment should, in the meantime, be suspended. The Appellate Division having, by a divided vote, sustained the exceptions and dismissed the complaint, the plaintiff appealed to this court.

*J. F. Parkhurst* for appellant. The one-year limitation in the policy did not commence to run until the appointment of plaintiff as executor. (*Wenman* v. *M. Ins. Co.*, 13 Wend. 268; *Bucklin* v. *Ford*, 5 Barb. 393; *Sanford* v. *Sanford*, 62 N. Y. 553; *Richards* v. *M. Ins. Co.*, 8 Cranch, 84; *Dunning* v. *O. Nat. Bank*, 6 Lans. 296; *Pendleton* v. *Pendleton*, 6 Bush [Ky.], 469; *Ward* v. *West*, 38 Ark. 243; *Benjamin* v. *De Groot*, 1 Den. 156; Code Civ. Pro. § 415; Angell on Lim. §§ 54–63, 144; *Mayor* v. *H. F. Ins. Co.*, 39 N. Y. 46; *Murray* v. *E. I. Co.*, 5 B. & A. 204; *Braun* v. *Sauerwein*, 10 Wall. 218; *Hobart* v. *C. T. Co.*, 15 Conn. 145; *Steen* v. *N. F. Ins. Co.*, 89 N. Y. 323; *Hay* v. *S. F. Ins. Co.*, 77 N. Y. 235.) Conditions of the policy as to proof and procedure after loss are entitled to a liberal and reasonable construction in favor of the insured. (*McNally* v. *P. Ins. Co.*, 137 N. Y. 398; *Trippe* v. *P. F. Soc.*, 140 N. Y. 26; *Ins. Co.* v. *Boykin*, 12 Wall. 433; *Paltrovitch* v. *P. Ins. Co.*, 143 N. Y. 75; *Bumstead* v. *D. M. Ins. Co.*, 12 N. Y. 92; *McLaughlin* v.

*W. C. M. Ins. Co.,* 23 Wend. 525; *Hoffman* v. *A. F. Ins. Co.,* 1 Robt. 501; *Norton* v. *R. & S. Ins. Co.,* 7 Cow. 649; *Dexter* v. *Norton,* 47 N. Y. 65; *C., etc., R. Co.,* v. *Hoyt,* 149 U. S. 1.) The plaintiff was not bound to apply for the appointment of a temporary administrator to bring this action. (*Hall* v. *Brennan,* 64 Hun, 397; 140 N. Y. 409; *Hayden* v. *Pierce,* 144 N. Y. 519; *McGregor* v. *Buel,* 24 N. Y. 166; Redfield on Sur. Prac. 334; *In re Chase,* 32 Hun, 320; Code Civ. Pro. § 2670; *Sanford* v. *Sanford,* 62 N. Y. 554; *Richards* v. *M. Ins. Co.,* 8 Cranch, 84; *Bucklin* v. *Ford,* 5 Barb. 393; Angell on Lim. 61; *Sheldon* v. *Heaton,* 88 Hun, 538; *Sebay* v. *Abithol,* 4 M. & S. 462; *Lux* v. *Huggin,* 69 Cal. 255; *Smith* v. *Duncan,* 16 N. J. Eq. 240.) The general provisions of the Code governing the Statutes of Limitations apply also to limitations by contract. (*Hayden* v. *Pierce,* 144 N. Y. 512; *Titus* v. *Poole,* 145 N. Y. 425; *Gee* v. *Torrey,* 77 Hun, 23; Code Civ. Pro. § 415; *Hay* v. *S. F. Ins. Co.,* 77 N. Y. 235; *Hoffman* v. *A. Ins. Co.,* 32 N. Y. 415.) The direction by the trial court of a verdict for the plaintiff was proper, upon the the evidence. (*Kenyon* v. *Kenyon,* 88 Hun, 211; *Rider* v. *Miller,* 86 N. Y. 507; *Gordon* v. *People,* 33 N. Y. 501; *Schwier* v. *N. Y. C. & H. R. R. R. Co.,* 90 N. Y. 558; *Byrne* v. *B., C. & N. R. R.,* 58 N. Y. S. R. 128; *Riley* v. *Riley,* 141 N. Y. 409.)

*I. N. Ames* for respondent. The plaintiff is not entitled to maintain this action and the motion for a nonsuit should have been granted by the trial court and the complaint was properly dismissed by the Appellate Division. (*I. F. Ins. Co.* v. *Coos County,* 151 U. S. 452; *Riddlesbarger* v. *H. Ins. Co.,* 7 Wall. 386; *Wilkinson* v. *F. N. F. Ins. Co.,* 72 N. Y. 499; *Wheeler* v. *C. M. L. Ins. Co.,* 82 N. Y. 543; *Wilson* v. *A. Ins. Co.,* 27 Vt. 99; *W. M. L. Ins. Co.* v. *Conner,* 98 Penn. St. 384.) Under the policy it is provided where the word "insured" occurs, it shall be held to include the legal representative of the insured. And the condition that no action can be sustained by the insured

or her legal representative unless commenced within twelve
months next after the fire is a condition precedent which has
not been performed or waived in the case at bar, hence there
can be no recovery. (*King* v. *W. F. Ins. Co.*, 47 Hun, 1;
*People* v. *A. S. B. Ins. Co.*, 69 N. Y. S. R. 721; *Ripley* v.
*A. Ins. Co.*, 30 N. Y. 163; *Wilkinson* v. *F. N. F. Ins. Co.*,
72 N. Y. 499; *Wheeler* v. *C. L. M. Ins. Co.*, 82 N. Y. 543;
*Tasker* v. *K. Ins. Co.*, 58 N. H. 469; *Riddlesbarger* v. *Ins.
Co.*, 7 Wall. 386; *Quinn* v. *R. Ins. Co.*, 62 N. Y. S. R. 738;
*Better* v. *P. Ins. Co.*, 32 N. Y. S. R. 686; *Chambers* v. *A.
Ins. Co.*, 51 Conn. 17; *Bradley* v. *P. Ins. Co.*, 28 Mo. App.
7.) Under the wording of the New York standard policy the
short contractual twelve months' limitation commences to run
from the day of the fire, not from the time the loss matures
or becomes due and payable. (*King* v. *W. F. Ins. Co.*, 47
Hun, 1; *Quinn* v. *R. Ins. Co.*, 62 N. Y. S. R. 738; *People*
v. *A. S. B. Ins. Co.*, 69 N. Y. S. R. 721; *Chambers* v. *A.
Ins. Co.*, 51 Conn. 17; *Bradley* v. *P. Ins. Co.*, 28 Mo. App.
7; *Johnson* v. *H. Ins. Co.*, 91 Ill. 92; *Carraway* v. *M. Ins.
Co.*, 31 La. Ann. 298; *Proska* v. *McCormick*, 56 Iowa, 318;
132 N. Y. 334.) By the policy time is made the essence
of the contract. (*Wheeler* v. *C. M. L. Ins. Co.*, 82 N. Y.
543.) The fact that there was a contest over the probate
of the will which lasted two or three years is no excuse.
(Bliss' Code, § 2688; Redfield on Surr. Prac. [2d ed.] 345;
*Wilkinson* v. *F. N. F. Ins. Co.*, 72 N. Y. 499; *Wheeler* v.
*C. M. L. Ins. Co.*, 82 N. Y. 543; *Riddlesbarger* v. *H. Ins.
Co.*, 7 Wall. 386; *Beebe* v. *Johnson*, 19 Wend. 500; *Wilson*
v. *A. Ins. Co.*, 27 Vt. 99; *Better* v. *P. Ins. Co.*, 32 N. Y. S.
R. 686; *Elliot* v. *M. B. Assn.*, 59 N. Y. S. R. 139.) The
general Statute of Limitation prescribed by law or the Code
has no application to a limitation stipulated by contract.
(*Wilkinson* v. *F. N. F. Ins. Co.*, 72 N. Y. 499; *Riddles-
barger* v. *H. Ins. Co.*, 7 Wall. 386; *Better* v. *P. Ins. Co.*, 32
N. Y. S. R. 686; *Quinn* v. *R. Ins. Co.*, 62 N. Y. S. R. 738;
*People* v. *A. S. B. Ins. Co.*, 69 N. Y. S. R. 721; *Tasker* v.
*K. Ins. Co.*, 58 N. H. 469; *Proska* v. *McCormick*, 56 Iowa,

318.) The learned trial court intimated that the death of the assured was an act of God that excused the commencement of the action until the will was probated. This was error. (*Wheeler* v. *C. M. L. Ins. Co.*, 82 N. Y. 543; *Dexter* v. *Norton*, 47 N. Y. 62; *Harmony* v. *Bingham*, 12 N. Y. 99; *Tompkins* v. *Dudley*, 25 N. Y. 272; *Beebe* v. *Johnson*, 19 Wend. 500; *Ward* v. *H. R. B. Co.*, 125 N. Y. 230; *Booth* v. *S. D. R. M. Co.*, 60 N. Y. 487; *School Dist.* v. *Dauchy*, 25 Conn. 530; *Wolfe* v. *Howes*, 20 N. Y. 197; *Clark* v. *Gilbert*, 26 N. Y. 279; *Spalding* v. *Rosa*, 71 N. Y. 40.) The non-performance of a contract is not excused by the act of God, when it may be substantially carried into effect, although the act of God makes a literal and precise performance of it impossible. (*Williams* v. *Vanderbilt*, 28 N. Y. 217; *Beebe* v. *Johnson*, 19 Wend. 500; *Blacksmith* v. *Fellows*, 7 N. Y. 401; *Norton* v. *Woodruff*, 2 N. Y. 153; *Tompkins* v. *Dudley*, 25 N. Y. 272; *Harmony* v. *Bingham*, 12 N. Y. 99; *Wheeler* v. *C. M. L. Ins. Co.*, 82 N. Y. 543.) To excuse non-performance it must appear that the thing to be done cannot by any means be accomplished; mere difficulty of performance is not enough and it is not a proper case for a court of equity to interfere and grant relief. (*Wheeler* v. *C. M. L. Ins. Co.*, 82 N. Y. 543.) There is no evidence in this case that establishes a waiver or creates an estoppel. (*Walsh* v. *H. F. Ins. Co.*, 73 N. Y. 5; *Marvin* v. *U. L. Ins. Co.*, 85 N. Y. 278; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6; *Messelback* v. *Norman*, 122 N. Y. 578; *Baumgartel* v. *P. W. Ins. Co.*, 136 N. Y. 547; *Hill* v. *L. A. Corp.*, 30 N. Y. S. R. 539; *Walton* v. *A. Ins. Co.*, 116 N. Y. 317; *Walker* v. *P. Ins. Co.*, 69 N. Y. S. R. 817; *Kyle* v. *C. A. Co.*, 144 Mass. 43; *W. M. F. Ins. Co.* v. *Conner*, 98 Penn. St. 384; *Moore* v. *H. F. Ins. Co.*, 141 N. Y. 219.) If the short contractual limitation in the policy is not wholly a matter of contract it does not help the plaintiff, as the general Statute of Limitation would not apply. (*Quinn* v. *R. Ins. Co.*, 62 N. Y. S. R. 738; 81 Hun, 207; *Hill* v. *Supervisors*, 119 N. Y. 344; *Dunham* v. *Sage*, 7 Lans. 419.)

Vann, J. The policy in question provided that if a fire should occur "the insured" should "give immediate notice of any loss thereby in writing to" the company, and "within sixty days after the fire" should furnish proofs of loss "signed and sworn to by said insured." It further provided that the loss should not become payable until sixty days after the receipt by the company of the proofs of loss, and that "no suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire." By a subsequent clause it was stipulated that whenever the word "insured" occurred in the policy it should "be held to include the legal representatives of the insured," and by a preceding clause that any change in interest, title or possession, "other than by death of the insured," should avoid the policy.

As the fire occurred after the death of Mrs. Silvernail, "the insured" at the date of the loss was either the person who, in the course of time, should be appointed by the surrogate to administer upon her estate, or the persons interested in her estate who expected to share therein. (13 Am. & Eng. Ency. of Law, 221; 21 id. 18; *Greenwood* v. *Holbrook*, 111 N. Y. 465.) As "legal representatives" are equivalent to "executors and administrators," where the subject-matter or context do not control the meaning, we will first proceed upon the assumption that, on the death of the testatrix, the words "the insured," as used in the policy, referred to the legal representative to be appointed by the surrogate. That person could, not, in the nature of things, be known until the appointment was actually made, as, in the case of testacy, the executor nominated might die or decline, and, in case of intestacy, none of the persons entitled to the right of administration might accept the trust. The policy, although of the standard form, was prepared by insurers, who are presumed to have had their own interests primarily in view, and hence, when the meaning is doubtful, it should be construed most favorably to

the insured, who had nothing to do with the preparation thereof. (*Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307, 313; L. 1886, ch. 488; L. 1892, ch. 690, § 121.)

Moreover, when a literal construction would lead to manifest injustice to the insured and a liberal but still reasonable construction would prevent injustice by not requiring an impossibility, the latter should be adopted, because the parties are presumed, when the language used by them permits, to have intended a reasonable and not an unreasonable result. (*Trippe* v. *Provident Fund Society*, 140 N. Y. 23, 26; *McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389.) Hence, it cannot be held that the policy became of no value upon the death of Mrs. Silvernail, because, at that moment she had, and of necessity, could have, no legal representative to give immediate notice of a fire if one had occurred. So, when the fire actually occurred there was still no legal representative to give the notice specified, yet the liberal construction that always obtains with reference to the procedure after a loss, does not permit us to hold that the policy became void because, under the circumstances then existing, the notice was not given at once. (*Paltrovitch* v. *Phœnix Ins. Co.*, 143 N. Y. 73, 76.) As the policy provides for the effect of death, and includes, under the head of "the insured," the legal representative of the insured, the parties necessarily contemplated a period longer or shorter in duration, depending upon circumstances, when there could be no one authorized to act for the estate. Hence, the covenants that "the insured" should give written notice immediately after the fire, and that within sixty days "the insured" should sign, swear to and deliver proofs of loss, are to be considered in the light of what may reasonably be presumed to have been within the contemplation of the parties when they entered into those covenants, as to the possibility of literal performance in case of a fire after the death of the original "insured" and before any opportunity to have a legal representative appointed by the surrogate. The words "immediately after the fire," as used with reference to the preliminary notice, and "sixty days after the fire," as used

with reference to the proofs of loss, are to be construed, not literally in all cases, but in the light of what was reasonable and possible in the case in hand. (*Bennett* v. *Lycoming C. M. Ins. Co.*, 67 N. Y. 274; Richards on Insurance, § 160.) The law does not require impossibilities. The disability to sue, caused by war, has been held to relieve a policyholder from the consequences of failing to bring suit within twelve months after a loss, as required by the policy, because compliance was impossible under the circumstances. (*Semmes* v. *Hartford Ins. Co.*, 13 Wall. 158.) The same cause was held for the same reason to legally excuse the non-payment of premiums upon a policy of life insurance as required by its terms. (*Cohen* v. *N. Y. Mut. Life Ins. Co.*, 50 N. Y. 610.) Still, as the covenants in question are essential to the safe conduct of the insurance business, in order to enable the insurer to promptly investigate the facts connected with a fire, to provide for paying or defending, or for rebuilding, if it so elected, it is incumbent upon those interested in the policy to make reasonable efforts to see that the covenants are kept and, within a reasonable time, to use such agencies as the law provides, in order that they may be kept, if possible. As was said by this court in *Wheeler* v. *Conn. Mut. Life Ins. Co.* (82 N. Y. 543, 550), with reference to the failure to pay premiums of life insurance owing to the insanity of the insured and the infancy of the assignees of the policy: " After Vose became insane he was not really the party in interest. He had assigned the policies to his children, and they were the parties interested therein and to be affected by a failure to perform the condition of the contract. Although Vose was their guardian, if incapacitated by his insanity a competent person could have been appointed in his place; and hence his insanity was not necessarily an insuperable obstacle to their performance of the condition of the policy, and they were not relieved thereby." Those who expect to share in the proceeds of the policy, when paid, cannot trifle with the subject nor delay action that would naturally result in compliance with the requirements of the contract.

If the appointment of an executor or administrator cannot for any reason be secured with ordinary promptness, it would not be a reasonable construction of the policy to cast all the risk and inconvenience of the delay upon the insurer, provided those interested in the estate could procure the appointment of a temporary representative, who, by taking the necessary steps, could keep the covenants entered into by the insured.

It is provided by section 2670 of the Code of Civil Procedure that, on the application of a creditor, or a person interested in the estate, the surrogate may in his discretion issue to one or more suitable persons letters of temporary administration, where delay necessarily occurs in the granting of letters testamentary or of administration owing to a contest before the surrogate, arising on an application therefor or for probate of a will, or for any other cause. At least ten days' notice must be given to each party to the proceeding who has appeared, but the period may be shortened to not less than two days by the surrogate upon proof that the safety of the estate requires it. A temporary administrator, thus appointed, " has authority to take into his possession personal property; to secure and preserve it; and to collect choses in action ; and, for either of those purposes, he may maintain any action or special proceeding." (§ 2672.) It is further provided that, " where a temporary administrator is appointed, in consequence of a contest respecting a will of real property, the order appointing him may confer upon him authority to take possession of real property, in the same or another county, which is affected by the will, and to receive the rents and profits thereof. The surrogate may, by an ·order, confer upon him authority to lease any or all of the real property, for a term not exceeding one year ; or to do any other act with respect thereto, except to sell it, which is, in the surrogate's opinion, necessary for the execution of the will, or the preservation or benefit of the real property. For either of these purposes, he may maintain or defend any action or special proceeding." (§ 2675.) While other powers are conferred by statute, or may be conferred by the surrogate, under its

authority, upon a temporary administrator, these are sufficient for the purpose of discussing the question now before us.

The will of Mrs. Silvernail embraced both real and personal property, including by specific mention the farm upon which the burned buildings stood, and indirectly the produce destroyed, through the power to sell the same in order to pay pecuniary legacies. The executor was given the right to sell the farm after five years, with power to lease the same in the meantime. The income, after deducting interest and taxes, was to be applied upon the incumbrances, and the proceeds of the sale, after payment of all the debts of the testatrix, were to be divided among her children.

A fire insurance policy, after a loss has occurred, is a chose in action, and a temporary administrator could collect the same and, if necessary, commence an action for that purpose. Whether the proceeds, when collected, would be real or personal property, or both, is unimportant in this case, as the power to collect is the vital fact. That power necessarily implies the further power to do whatever is requisite in order to perfect the chose in action so that collection can be enforced, for the power to do an act includes the power to do all that is reasonably necessary to do it effectively. (*Hall* v. *Lauderdale*, 46 N. Y. 70, 73; *Parker* v. *Supervisors*, 106 N. Y. 392.) Independent, therefore, of the provisions of the statute empowering the surrogate to confer authority upon the temporary administrator in regard to real estate, when there is a contest respecting a will of realty, we think that the right to collect the policy carried with it the right to serve all such notices as the policy required, in order to make it collectible. Hence, it was within the power of the persons expecting to share in the property of the testatrix to do something toward keeping her covenants with the defendant. While it is true that their application, if made to the surrogate, was subject to his discretion, it cannot be presumed that he would have hesitated to appoint a temporary administrator if the facts, bearing upon the subject, were spread before him that appear in the record now before us. (*McGregor* v. *Buel*, 24 N. Y. 166, 169.)

Moreover, even if the application, although made in due time and form, had failed, it would have relieved the beneficiaries under the will from the accusation of negligence that is now brought against them, for they could say in answer thereto, "We have done all that we could." No excuse, sufficient or otherwise, for non-action was shown, such as absence, insanity, infancy, or want of knowledge that the fire had taken place. The subject of applying for a temporary administrator was under discussion among the heirs while the contest over the will was in progress. Not long after Mrs. Silvernail died, the plaintiff deposited the will with the surrogate, and informed him that he did not want to have anything to do with it, but after the lapse of several months, upon the request of certain creditors of the testatrix, he consented to act, and thereupon proceedings were begun to prove the will. Mrs. Silvernail left three children, each of whom was a devisee or legatee under the will, and all were of full age and competent to act, except one, who was an infant of thirteen when her mother died. Two of them, at least, lived within sight of the building in question at the time of the fire. So far as appears, therefore, there was no reason why a temporary administrator should not have been applied for and appointed. The contingency of death was foreseen and provided against by provisions in the policy which kept it alive notwithstanding that event. (*Dolan* v. *Rodgers,* 149 N. Y. 489; *Dexter* v. *Norton,* 47 N. Y. 62.) The legal representative was by the contract substituted as "the insured," upon whom rested the burden of performing those covenants which Mrs. Silvernail had entered into. The insurance company was under no obligation to procure the appointment of an administrator, temporary or permanent, even if it had been in a position to, because its promise to pay was dependent on prior action by the insured, but those entitled to the proceeds of the policy when paid were bound to do so, if they could by reasonable effort, so that the agreement could be performed on the part of "the insured."

If the executor could have acted by virtue of the power con-

ferred by the will, without probate or other action by the surrogate, his default is too apparent to require discussion.

Upon the assumption that the legal representatives of the insured, referred to in the policy, included the heirs at law, next of kin, legatees or devisees, as the case may be, the situation of the plaintiff is not improved, because, according to that theory, there was no time when competent persons, sustaining one or more of those relations to the decedent, with full knowledge of all the facts, could not have given the preliminary notice and furnished the proofs of loss. ( *Wyman* v. *Wyman*, 26 N. Y. 253 ; *O'Brien* v. *Phœnix Ins. Co.*, 76 N. Y. 459 ; *Greenwood* v. *Holbrook*, 111 N. Y. 465.) The delay in serving notices and in bringing the action was in no respect owing to the defendant, which, so far as appears, did nothing to mislead any one, or to waive the defenses it now insists upon.

Some evidence was giving tending to show that a son of the testatrix, about ten days after the fire, signed and swore to a statement of the loss and delivered it to an aunt, but he could not tell what she did with it. She died before the trial and there was no satisfactory evidence to show that the statement sworn to by the son ever reached the defendant. One witness testified that he saw a lady, who, as he thought, was a " Silvernail," deliver a paper to a man who claimed to be an adjuster and that they talked about the loss. The nature or contents of the paper was not shown and it did not appear that the man was an adjuster for the defendant, except by the verification of the answer, which was not put in evidence. But even assuming that there was evidence to sustain a finding that both the preliminary and final notice of loss were given to the defendant as required by the policy, the fact remains that this action was not begun until long after the time limited for that purpose had elapsed, and yet no lawful reason is given for not procuring temporary administration in time to have sued within the stipulated period.

Therefore, whether the policy means by legal representative the appointee of the surrogate, or some person directly

interested in the estate, or both, there was a failure to comply
with its provisions, with no excuse for non-compliance. / The
" insured " was bound by contract to do certain acts, as con-
ditions precedent to the right to recover, and was under a
legal obligation, if there were obstacles in the way, of making
a reasonable effort to remove them. (*Howland* v. *Edmonds,*
24 N. Y. 307, 308 ; *Porter* v. *Kingsbury,* 71 N. Y. 588 ;
*Reining* v. *City of Buffalo,* 102 N. Y. 308.)   If, after due
diligence, they had proved insurmountable for a time, the
delay would have been excusable, and performance at the
earliest practicable moment thereafter would have been suffi-
cient, but to excuse non-performance it must appear that the
act to be done could not, by any reasonable means, have been
accomplished.    Mere difficulty of performance is not enough.
( *Wheeler* v. *Conn. Mut. L. Ins. Co.,* 82 N. Y. 543, 551.)
In *Sanford* v. *Sanford* (62 N. Y. 553) it appeared that the
defendant's intestate was adjudged an idiot in 1847, and that
the committee then appointed died in 1854.    The intestate
died December 9, 1864, and during the ten years preceding
his death he had boarded with the plaintiff and was clothed
and cared for by her, and she paid his necessary funeral
expenses, yet it was held that the Statute of Limitations
applied to the whole claim accruing before the death of the
intestate.    Judge ALLEN said : " There was no legal impedi-
ment to an action against the intestate.    Had there been a
committee in office, the creditor could have petitioned the
court either for a summary adjustment and payment of her
claim, or for leave to sue.    As there was no committee,
although it seems the judgment of the court, determining that
the debtor was *non compos mentis,* was in force, the plaintiff
might have applied to the court for leave to sue, or, perhaps,
have brought an action without such leave.    One or the
other of these courses was open to the plaintiff, and which
would have been the proper practice it is not necessary to
determine."

The failure to apply for a temporary administrator and to
endeavor through him to give the notices required by the

policy and essential to perfect the cause of action, and then to have suit brought therefor within the period stipulated, was absolute and without excuse, and hence the plaintiff, upon the facts now presented, was not entitled to recover. The motion for a nonsuit, which raised generally or specifically all of the defenses discussed, should have been granted because it affirmatively appeared that the conditions of the policy had not been complied with by " the insured." ·

The judgment of the Appellate Division not only sustained the exceptions taken by the defendant upon the trial, but also dismissed the complaint on the merits. This it had no power to do. The Code of Civil Procedure provides two methods of review by the Appellate Division, before the entry of judgment, when the trial was before a jury. The first is authorized by section 1000 which permits the presiding judge, in his discretion, to order that the exceptions taken during the trial be heard in the first instance by the Appellate Division and that judgment be suspended in the meantime. In such a case, as the section further provides, " the exceptions must be heard upon a motion for a new trial, which must be decided by the Appellate Division." The decision should either grant or deny the motion. If the exceptions were well taken, the motion should be granted and the case sent back for a new trial. ˙ If the exceptions were not well taken, the motion should be denied and judgment entered on the verdict, or the order of nonsuit as the case may be. (*Huda* v. *American Glucose Co.*, 151 N. Y. 549.) The only function of the Appellate Division is to grant or deny the motion and order judgment accordingly. It cannot go farther and dismiss the complaint on the merits, because the Code does not authorize it. The verdict or order is the authority for the entry of a final judgment, and if the exceptions are not sustained the judgment must be in favor of the party for whom the verdict was rendered, while, if the exceptions are sustained, there can be no final judgment, but simply the award of a new trial.

The second method of reviewing before judgment is when a verdict is taken subject to the opinion of the court as author-

ized by section 1185 of the Code. In such a case the motion is not for a new trial, but for judgment, and it may be made by either party before the Appellate Division under section 1234. The decision of a motion of that kind necessarily involves a direction for judgment.

As the case now before us arose under section 1000, the action of the learned Appellate Division in dismissing the complaint was inadvertent and without authority.

The judgment appealed from should, therefore, be so modified as to sustain the defendant's exceptions and order a new trial, and as so modified affirmed, with costs to abide event.

Martin, J. (dissenting). In this case the cause of action did not accrue until after the death of the testatrix. At that time there was no person who was authorized to enforce or comply with the provisions and requirements of the policy. Until a representative of the estate of the testatrix was appointed, who was authorized to commence an action and perform the conditions of the policy, neither the contractual limitation commenced to run nor was the previous non-performance of its condition a bar to the action. The fact that the appointment of a temporary administrator might have been applied for does not change the situation. Whether an administrator would be appointed rested wholly in the discretion of the surrogate, and no certainty that it would have been done existed at any time. The creditors and other persons interested in the estate were not required to make that experiment to protect their rights under the policy.

I think the judgment should be reversed.

Vann, J., reads for modification and affirmance; Andrews, Ch. J., Gray, Bartlett and Haight, JJ., concur; Martin, J., reads memorandum for reversal, and O'Brien, J., concurs.

Judgment modified and affirmed.