Charles A. Loreto, J.
Some time in July, 1954 plaintiff applied to defendant companies for liability insurance. A policy dated September 3, 1954 was subsequently issued “in respect of the Insured Synagogue situate as stated in Item No. 2 above.” (The item reference is to the street address.) Thereafter, in February, 1955, a summons was served on the plaintiff on behalf of Sidi and Moses D. Friedlander arising out of an alleged accident in the part of plaintiff’s premises occupied by the rabbi as his residence. The summons was turned over to the defendants who interposed a notice of appearance and answer. Subsequently, plaintiff was informed that investigation disclosed that although the policy was written to cover a synagogue, the premises were in fact occupied as apartments and that, therefore, the policy was void from its inception. Defendants then withdrew from the action and returned to the plaintiff all documents and pleadings together with a check refunding premiums paid on the policy. The check was never cashed and the negligence action is still pending.
*304 Plaintiff in this action is requesting declaratory judgment holding that the defendants had no legal justification in refusing to defend the negligence action and to pay any judgment arising therefrom. The additional prayer for reformation of the insurance contract was withdrawn after the trial.
Plaintiff was incorporated as a religious corporation by a certificate filed in the Bronx County Clerk’s office on August 19, 1950 to establish and maintain a synagogue and place of worship in accordance with the doctrines of Orthodox Judaism, a religious school and “to do and perform all and anything which may be necessary, advisable, suitable and proper for carrying out ” its purposes.
Plaintiff, thereupon, acquired the premises and building located at 206-208 Bush Street in The Bronx. As viewed from the street the building has two adjoining entrances, one leading to the place where the congregation worships, the other up a flight of stairs to a two-room apartment occupied by the rabbi, and a two and one-half-room apartment occupied by the sexton. A third story is used as a meeting place and school. The upstairs premises extend over the part wherein the congregation meets but, apparently, there is no internal stairway. Neither the rabbi nor the sexton pay a rental for their living quarters and the entire premises are tax exempt. Prior to plaintiff’s occupation the building was classified as a multiple dwelling.
It is the defendants’ contention that the existence of the apartments on the plaintiff’s premises. causes the entire structure to lose its characterization as a synagogue and that the purportedly erroneous description of the premises voided the policy. What authority there is on this point in this jurisdiction indicates that defendants’ position has no merit. The fact that living quarters for personnel closely associated with an institution is provided is merely incidental to the general purpose for which the building exists, and does not change the institution’s characterization.
In People ex rel. Cairns v. Murray (148 N. Y. 171, 176) the court stated: ‘ ‘ The section applies to a building occupied exclusively as a church or school house. The building in question was erected for the purpose of a parochial school. It had been used for that purpose since the time of its erection, but as the Sisters of Charity who had charge of the school also resided in the upper' rooms of the building, or some of them, the learned counsel for the relator suggests that the section is not applicable. This point was overruled by the court below, and we think properly. A building erected and used for the purpose of a school is not given any other character than that *305 of a school house by the mere fact that the teachers, or some of them, reside iu it. A school or a college building may have in it rooms or apartments for the use of the students and teachers, and it would still be a building occupied exclusively as a school house within the meaning of the statute. Such use of rooms or parts of the building is incidental to the process of education, and is just as clearly within the policy of the law as if the entire structure was used exclusively for school rooms.” (See, also, People ex rel. Clausen v. Murray, 16 Misc. 398.)
Nor may defendants deny their contractual obligations by asserting that the structure is a multiple dwelling. Whatever classification the building might have had at one time, it is clear that in its present status it does not come under the statutory definition of a multiple dwelling (Multiple Dwelling Law, § 4, subd. 7).
Defendants’ further contention that there are two severable units involved herein, i.e., a synagogue and a dwelling house and that only one, the synagogue, was intended to be covered by the policy, is unconvincing in light of the photographs submitted by both sides which indicate a single structure and the evidence at the trial which establishes the interrelation of the two parts. Had it been defendants’ intention to refuse to assume the risk of liability over any single area of the premises, it could have easily done so by proper words of limitation. To hold that such a limitation was intended would strain reason and logic and would be contrary to established rules of interpreting insurance contracts (Matthews v. American Cent. Ins. Co., 154 N. Y. 449, 456-457).
The court surmises that the disclaimer of coverage here is probably due to suspicion of collusion. That may be its defense to the negligence action. However, what the court is called upon to decide now is not the validity or merits of that action but the interpretation of the policy coverage. “ The contract which the parties have made limits the power of the courts. The law can declare a liability based upon the contract, but it has no power to make a contract.” (Miller v. American Eagle Fire Ins. Co., 253 N. Y. 64, 67.) The defendants would here have the court make over their contract.
Plaintiff is entitled to judgment. Submit findings and judgment on notice.