COVINGTON COTTON OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5534. Promulgated June 29, 1928.

*George T. Adams, Esq.*, for the petitioner.
*A. S. Lisenby, Esq.*, for the respondent.

TRAMMELL: This is a proceeding for the redetermination of deficiencies in income and profits taxes for the fiscal years ended May 31, 1919, and May 31, 1920, in the amounts of $547.67 and $644.57, respectively. The questions involved are the rate of depreciation properly allowable on machinery and the deductibility of certain reserves and expenditures.

The petitioner is a corporation organized under the laws of Georgia, having its principal place of business in Atlanta. It was organized in 1916. Upon its organization it took over the business and assets of the Newton Cotton Oil Mill, which was organized in 1908, and carried on its business with the machinery and other assets which had been used by the Newton Cotton Oil Co.

During the taxable years involved, the petitioner claimed as deductions in determining its income the following amounts:

(a) A reserve of $1,000 covering settlements pending on sales of oil, meal and hulls.

(b) A reserve of $1,040 covering loss on oil contracts.

(c) Accrued rents amounting to $873.50.

(d) Cost of replacing drain pipe, $322.50.

(e) $800 covering two-thirds difference paid on exchange of two motors.

(f) $400 covering cost of pump.

(g) $832.05 covering the cost of repairing cooker.

(h) $2,000 covering cost of cooker discarded.

(i) $606 covering repairs to roof of seed house.

(j) $2,657.66 covering cost of linter shed or warehouse.

(k) $4.725.17 covering value of machinery discarded.

The petitioner also claims that it is entitled to a deduction for depreciation on its machinery at the rate of 10 per cent. The respondent allowed the deduction with respect to depreciation on machinery at the rate of 5 per cent.

The reserve of $1,000 covering settlements was set up to cover claims that might be made in the future for adjustments on account of inferior products, such as "off oil" "off meal" and "off hulls." In our opinion the respondent properly disallowed this deduction.

The petitioner also set up a reserve of $1,040 for the purpose of covering loss on oil contracts. The petitioner on March 20, 1920, bought 100 barrels of oil for future delivery and on May 18, 1920, bought 300 barrels of oil for future delivery. Both of these contracts were outstanding on May 30, 1920. The reserve of $1,040 was set up on May 31, 1920, to take care of losses on these contracts. There is no evidence, however, that the contracts were closed out and the oil acquired prior to the close of the fiscal year. It was not definitely known at the close of the fiscal year to what extent there would be loss, if any, with respect thereto. The action of the respondent in this particular is approved.

The petitioner at the end of 1920 had accrued on its books rentals due by it in the amount of $600 to the Royal Cotton Products Co. and an unknown amount to the Cotton Warehouse Co. There is no evidence, however, as to what period this rental was for, or whether it became due in some preceding period. Not knowing these facts, we can not determine that the amount accrued during either of the taxable years involved.

The petitioner expended $322.50 in order to replace a drainage pipe in its plant. This item is not shown by the evidence to have been other than a capital expenditure as determined by the Commissioner.

The petitioner also traded in two motors for new ones and claimed as a deduction from income two-thirds of the difference paid on the exchange. The new motors were acquired in order to make the plant operate more economically. The petitioner capitalized one-third of the difference between the cost price of the new motors and the value allowed for the old. The respondent determined that the new motors represented capital expenditures and treated as capital the entire difference between the value of the old motors and the cost price of the new. We think that the determination of the respondent in this respect was correct.

The petitioner also found it necessary during the taxable period involved to repair a pump. After investigation it was found that a

secondhand pump could be acquired for approximately the cost of repairing the old one. The secondhand one was therefore acquired for $400 and the old one was taken out and discarded. The petitioner claims a deduction on account of the cost of the secondhand pump as being expense. The Commissioner treated this as being a capital acquisition. In our opinion, the determination of the respondent was correct.

The petitioner also spent $832.05 in repairing a cooker. The repairs consisted of putting in new valves, new shafts and other like parts. The work did not consist of rebuilding the cooker, but was in the nature of general repairs, and we think that the respondent erred in disallowing this amount as a deduction as being ordinary and necessary expense.

The petitioner also during its fiscal year 1920 removed and discarded a cooker and claimed a deduction in its return in the amount of $2,000, covering the cost of the cooker less depreciation sustained up to that time. The petitioner, however, did not produce sufficient competent evidence to enable us to determine the cost of this cooker.

During 1920, $606 was expended for what were designated as repairs to a roof of a seed house. From the evidence it appears that this expenditure was for replacements rather than for repairs, and we think that the respondent correctly disallowed the deduction as expense.

The petitioner also expended $2,657.66 in order to build a warehouse or shed for the purpose of storing linters which had been cut by the petitioner for the United States Government. There was testimony to the effect that this shed or warehouse was not of permanent construction and after the Government orders for linters had been filled the petitioner had little if any use for this building. There is no testimony however, that this building was abandoned by the petitioner or that it had become worthless, and could not be sold during the taxable year. In any event, the cost of this building is not allowable as a deduction on account of ordinary and necessary expenses. The respondent properly capitalized it.

The petitioner also during 1920 installed linter machines at a cost of $6,848.06 in order to cut a low grade of linters which were required for the Government. These machines were in operation for a portion of two years, at the expiration of which time they had very little value to the petitioner for the purpose of its business. General business did not require the use of such machines. The petitioner could find no market for the particular kind of linters which the Government required.

There is no evidence that during the taxable years involved the petitioner ceased the use of these machines, nor is there any evidence that the machines were of no value when removed, or that their value

had been reduced to scrap value. There is some evidence to the effect that the petitioner did at some time cease using these machines and that it could not during the year it ceased using them sell them, as there was no market for them, during that time, but this evidence is not sufficient to warrant us in holding that the respondent was in error in disallowing the deduction claimed as a loss with respect to the machines during 1920.

The petitioner also claimed that it should be entitled to a deduction during the taxable years involved on account of the exhaustion, wear and tear of its machinery at the rate of 10 per cent instead of 5 per cent as allowed by the respondent. One of the officers of the petitioner corporation testified that in his opinion the average life of the machinery was about 10 years, but in our opinion the actual facts in the case are inconsistent with the opinion of the witness. The machinery had been in actual use since 1908 and was still in use during the taxable years involved, which was clearly indicative that it had a life greater than 10 years, and from all the testimony we are unable to find that the allowance on account of the exhaustion, wear and tear of the machinery made by the respondent was not a fair and reasonable allowance on that account.

*Judgment will be entered under Rule 50.*