Robert M. Craig v. Commissioner.
Craig v. Commissioner
Docket No. 13843.
United States Tax Court
1948 Tax Ct. Memo LEXIS 130; 7 T.C.M. (CCH) 532; T.C.M. (RIA) 48143; July 29, 1948
John J. Alder, Esq., for petitioner. George E. Gibson, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $173.63 in petitioner's income and victory tax for 1943 by disallowing (1) the deduction of amounts expended for board and lodging while petitioner was employed as industrial education supervisor for Kansas and western Missouri, and (2) the deduction of the cost of shingles used to cover the leaky roof of a tenant house. Petitioner contends *131 that both deductions are proper because the cost of the board and lodging was a travel expense incurred while away from home in the pursuit of business, and the shingles were used for roof repair. Findings of Fact Petitioner, now a resident of Harrison, Arkansas, filed his income tax return for 1943 with the collector of internal revenue for the district of Arkansas. He is married and during 1943 his wife resided near Harrison on a farm owned by him. About October 1942 petitioner was employed by the University of Kansas situated at Lawrence, Kansas, as a supervisor of Industrial Education. He was offered this position by Guy Keeler, head of the University's department of Engineering Science Management and War Training, which was under the supervision of the Federal Office of Education. Petitioner's duties were to visit war plants in Kansas and western Missouri, to ascertain their needs for skilled workers; to organize classes and to procure instructors for training employees in the required skills. Most of the plants were located in the vicinity of Kansas City, Missouri, where petitioner spent from two-thirds to three-fourths of his time, but he also rendered services to plants *132 at Independence, St. Joseph, and Lexington, Mo., and at Kansas City, Atchison and De Soto, Kansas, and he personally made reports on his work once a week to Keeler at Lawrence, Kansas, usually driving there on Saturday and occasionally spending the night at Keeler's home. In offering the position, Keeler stated that the program covered a good many towns and that petitioner might be called on to go anywhere within the territory. He also gave petitioner to understand that the University would make reimbursement for expenses of his lodgings and subsistence and would allow him six cents a mile for travel in his own car. Keeler furnished petitioner with blank vouchers for expense claims, and all such claims which petitioner submitted were paid by the University. Petitioner was provided with a card, signed by the University's secretary, accrediting him as a supervisor of Industrial Education. The University did not require him to reside at Lawrence, and for convenience he rented a room by the month in the home of a friend in Kansas City, occupying it and taking meals at the friend's table while he was working in that vicinity. He kept this room continuously rented throughout 1943, and *133 during that year paid a total of $690 to the friend for the lodging at the rate of 65 cents a day and for the board at the rate of 75 cents a meal. During the year he spent 16 days at his Arkansas farm where his wife resided. Petitioner made no claim against the University for reimbursement of the $690 which he paid to his friend for board and lodging, and has never been reimbursed therefor. Petitioner was brought to Kansas City as an infant, and resided there until 1924 when he left his mother's home to work for the Mosler Safe and Vault Co. of Hamilton, Ohio, in a position which required travel. He voted in Kansas City. In January 1942 he left his position with the Mosler Company, and later came back to Kansas City, seeking employment with the Remington Arms Co. Finding no hotel accommodations available, he accepted a friend's offer of lodging; the friend introduced him to Keeler, who offered him the position as supervisor of industrial education with the University, and rented him a room. Petitioner remained employed by the University until February 1, 1945; he was thereafter without work for several months; went to Washington, D.C., where he was engaged by the War Production *134 Board, and sent back to Kansas City. During 1943 petitioner was a resident of Kansas City, which was his principal place of employment. During 1943 the roof of a tenant house located on petitioner's farm was damaged by a wind storm, several holes being made in the wooden shingles. The tenant, who was employed by petitioner for farm work, threatened to leave unless the roof was repaired, and petitioner ordered two or three bundles of shingles to fill in the holes. On finding numerous leaks in other places, however, he decided to cover over the wooden shingles with composition shingles; purchased enough of the latter to cover the entire roof, and the tenant did the work in putting them on the roof. In the purchase of shingles petitioner expended $125. No old shingles were removed and there was no change in the structural features of the house. On his income tax return for 1943 petitioner deducted the $690 paid to his friend for room and meals in Kansas City and the $125 paid for shingles. The Commissioner disallowed the former deduction on the ground that petitioner's post of duty was Kansas City, and the latter deduction on the ground that the amount was spent for a new roof, not *135 a repair. Opinion Petitioner contends that deduction of the amount paid to his friend for room and meals in Kansas City is warranted by section 23 (a) (1) (A), Internal Revenue Code, which permits the deduction of: "* * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *." At the hearing he reduced the amount claimed by $46.40, as covering the 16 days which he spent at his Arkansas farm where his wife lived. This farm, he argues, was his home, and having accepted a position for which he was subject to travel when required and for which no definite "post of duty" was fixed, he was consequently "away from home in the pursuit of a trade or business" throughout 1943. Admitting that he failed to ask reimbursement for the expenses in controversy although the University had agreed to pay his lodging and subsistence on travel, he professed a delicate reluctance to bother his friend for the required receipts, and felt further that he should not claim the expense of two rooms for the days that he was absent from Kansas City. Respondent argues that petitioner's post of *136 duty was Kansas City, as he determined, and the cost of board and lodging there constituted petitioner's personal living expenses, for which by section 24 (a) (1), "no deduction shall in any case be allowed." The two sections upon which the parties respectively rely must be read together for a proper construction of each. Commissioner v. Flowers, 326 U.S. 465. So reading them, we perceive no merit in petitioner's contention. He rented a room permanently in Kansas City for convenience, as he testified. Most of his work involved war plants in that vicinity, and he spent there from two-thirds to three-fourths of his time. It is immaterial that the University did not expressly require him to live there. Kansas City was indicated as his principal place of employment by the location of the war plants, and he properly so recognized by his decision to rent regular lodgings there. Petitioner was obviously not in the situation of one who travels constantly in the course of his business and has no permanent abode, see Charles G. Gustafson, 3 T.C. 998. His principal place of employment was Kansas City, and the expenses which he incurred and paid there for room and *137 board were personal and hence nondeductible even although for reasons of his own he maintained a home on his farm near Harrison, Arkansas, in which his wife resided. Bercaw v. Commissioner (C.C.A., 4th Cir.), 165 Fed. (2d) 521; York v. Commissioner (D.C. App.), 160 Fed. (2d) 385; Barnhill v. Commissioner (C.C.A., 4th Cir.), 148 Fed. (2d) 913; William W. Todd, 10 T.C. 655 (promulgated April 20, 1948); John D. Johnson, 8 T.C. 303; Arnold P. Bark, 6 T.C. 851. Petitioner cites Coburn v. Commissioner (C.C.A., 2nd Cir.), 138 Fed. (2d) 763; Harry F. Schurer, 3 T.C. 544, and Chester D. Griesemer, 10 B.T.A. 386, as supporting his contention. But in these cases the taxpayer's employment away from his principal place of business was envisaged as of short duration and was later protracted by other short-term engagements or by unanticipated developments. Petitioner's employment on the contrary was of indefinite duration and he had no regular or principal place of business except Kansas City. The evidence does not support the assertion in his brief that his services "required constant *138 travel and movement" except in the sense that he had to move from plant to plant in the Kansas City area most of the time and on occasion "worked out" of Kansas City at other points in Kansas and western Missouri. The University paid his expenses at the other points and paid him for his weekly trip to Lawrence, Kansas, to make reports. But his living expenses in Kansas City were personal, and the Commissioner's disallowance of a deduction in respect of them is approved. Petitioner also seeks deduction of $125 expended for shingles to cover the roof of a tenant house occupied by an employee on his farm. He contends that the amount is deductible as a business expense because by it the roof was repaired. Respondent argues that the amount should be capitalized, because by it a new roof was placed on the house, and the cost of a new roof is not deductible. Fred Dodd, 18 B.T.A. 563; H. S. Crocker Co., Inc., 15 B.T.A. 175; Covington Cotton Oil Co., 12 B.T.A. 1018; Cotton Concentration Co., 4 B.T.A. 121. By section 29.23 (a)-4, Regulations 111: "* * * The cost of incidental repairs which neither materially add to the value of the property *139 nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, * * *." Petitioner stresses that he made no structural changes in the roof and did not tear away the old shingles. We are of opinion, however, that the covering with a new type of shingle precludes the view that the old roof was merely being repaired. The distinction between a deductible repair and a nondeductible improvement is often difficult to define, but petitioner's change of intention serves as a good illustration of the difference. Had he adhered to his original purpose of covering holes in the old roof with wooden shingles, he clearly would have made a repair. But concluding that the old roof could not be satisfactorily repaired in that way, he covered the structure entirely with composition shingles. Such coverage was an improvement, not a repair, and the Commissioner properly disallowed deduction of its cost. Decision will be entered for the respondent.